**Layne THOMAS, Respondent,**

v.

**DIRECTOR OF REVENUE, State of Missouri, Appellant.**

**No. WD 47942.**

Missouri Court of Appeals, Western District.

May 3, 1994.

Peter Joseph Dunne, St. Louis, James D. Berrey, Kansas City, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., James A. Chenault, III, Sp. Asst. Atty. Gen., Mo. Dept. of Revenue, Jefferson City, for respondent.

Before TURNAGE, C.J., P.J., and FENNER and SPINDEN, JJ.

PER CURIAM.

The Director of Revenue (Director) appeals an order reinstating the driver's license of Layne Thomas following a trial de novo under the administrative suspension and revocation provisions of sections 302.500–.540, RSMo 1986 (repealed). On appeal, the Director claims error in excluding a maintenance report on the breathalyzer machine used for testing Mr. Thomas. At issue is whether that maintenance report was admissible as a business record.

We reverse and remand for new trial.

Section 302.505.1 requires the Department of Revenue to suspend or revoke the driver's license of a person arrested on probable cause to believe that the person was driving a motor vehicle with a blood-alcohol concentration of .10 per cent or more by weight. Section 302.535.1 places the burden of proof on the state at a trial de novo. Breathalyzer test results are essential to establish a prima facie case. Admission of those test results depends on meeting numerous foundational prerequisites. Upon timely objection to the admission of breathalyzer test results, the State must prove that a maintenance check has been performed on the breathalyzer machine within 35 days before the test. *Sellenriek v. Director of Revenue*, 826 S.W.2d 338, 341 (Mo. banc 1992). In addition to proof of the maintenance check, the State must show that the breathalyzer test was performed: (1) by following techniques and methods approved by the Division of Health, (2) by an operator holding a valid permit, and (3) on approved equipment and devices. *Id.* at 340–41; *Spies v. Director of Revenue*, 854 S.W.2d 66, 68 (Mo.App.1993).

Here, the trial court sustained Mr. Thomas' objection to the admission of the maintenance report on the breathalyzer machine used to test his blood-alcohol concentration.

The court also refused to admit the operational checklist and the results of the breathalyzer test. Consequently, at the close of the State's case, the court dismissed the revocation, and ordered reinstatement of Mr. Thomas' driver's license.

The following is a summary of the evidence and offers of proof presented at the trial de novo: Officer Baskerville arrested Mr. Thomas after a traffic stop when the officer noticed signs of alcohol intoxication and observed poor performance of field sobriety tests. After his arrest, Mr. Thomas was transported to police headquarters where Officer Eyre administered the breathalyzer test on him.

At the trial de novo, Officer Eyre presented credentials showing his Type II permit which authorized the officer to operate, inspect, calibrate, and repair breathalyzer equipment. Officer Eyre identified the breathalyzer machine used for Mr. Thomas' test by serial number 66–002845. The officer explained the procedures for performing maintenance checks on breathalyzer equipment. He identified a copy of the maintenance report for machine number 66–00284 made weeks before Mr. Thomas' test. Officer Eyre also detailed the procedures he followed in preparing the machine for Mr. Thomas' test and in testing Mr. Thomas. Pursuant to offers of proof, the State presented Officer Eyre's operational checklist showing the steps he took in performing the breathalyzer test, and a print-out of the test results showing Mr. Thomas' blood-alcohol concentration to be .139 per cent.

Officer Brenneman, also a Type II permit holder, appeared at the trial de novo with the original maintenance reports for breathalyzer machine number 66–002845. He explained that he and other Type II permit holders performed maintenance checks and made reports on the police department's breathalyzer equipment on a rotating basis. Officer Brenneman's duties also included keeping records of those maintenance checks. He noted that copies were sent to numerous government agencies, and that the originals were kept in a file cabinet in a department office. Officer Brenneman identified the report of the maintenance check made on breathalyzer machine number 66–002845 by Officer Mills within 35 days before Mr. Thomas' test. The court sustained Mr. Thomas' objection to that report for lack of proper foundation. In making offers of proof, the State presented the report indicating that the breathalyzer machine passed every diagnostic check required by the Department of Health and that the machine was working properly.

█ The Director contends that the maintenance report on the breathalyzer machine should have been admitted as a business record under section 490.680, RSMo 1986. Countering, Mr. Thomas insists that no foundation existed for admission of the maintenance report. According to Mr. Thomas, nothing proved the propriety of the procedures used or the accuracy of the recorded results. In support of his position, Mr. Thomas emphasizes the absence at trial of the person who tested the breathalyzer machine and made the report. He also notes that the officers who testified about the report had no personal knowledge of the maintenance check, or of the accuracy in recording the results.

█ Section 490.680 provides for admission of a business record for the truth of the matter asserted if (1) the custodian or other qualified witness testifies to its identity and the mode of its preparation, and (2) the record was made in the regular course of business, at or near the time of the act, condition, or event. *Spies*, 854 S.W.2d at 67. Upon qualification under section 490.680, records establishing proper maintenance of breathalyzer equipment speak for themselves. *Lazzari v. Director of Revenue*, 851 S.W.2d 68, 69–70 (Mo.App.1993).

We conclude that the breathalyzer maintenance report qualified as a business record. Officer Brenneman held a Type II permit that authorized him to maintain and to operate breathalyzer equipment; his duties included keeping the maintenance reports on the breathalyzer equipment. At trial, the officer identified the report on the machine used for Mr. Thomas' test. He explained the regular procedures for maintaining the breathalyzer equipment and for making the maintenance reports. Contrary to Mr.

Thomas' assertions, the report preparer need not lay the foundation, and the records' custodian need not have personal knowledge of the mode of preparation. *Spies,* 854 S.W.2d at 68.

We find that the trial court erred in excluding the maintenance report from evidence. We reverse the judgment, and remand the cause for a new trial.

All concur.