Matthew P. KRIEGER, Respondent,

v.

DIRECTOR OF REVENUE, STATE OF MISSOURI, Appellant.

No. ED 76512.

Missouri Court of Appeals,
Eastern District,
Division Five.

March 28, 2000.

Jeremiah W. (Jay) Nixon, Atty. Gen., James A. Chenault, III, Sp. Asst. Atty. Gen., Mo. Dept. of Revenue, Jefferson City, for appellant.

Mark S. Vincent, Union, for respondent.

LAWRENCE G. CRAHAN, Judge.

The Director of Revenue ("Director") appeals the judgment of the Circuit Court of Franklin County setting aside the revocation of Matthew Krieger's ("Driver") driving privileges. We reverse and remand with directions to reinstate the revocation.

On November 13, 1998, Deputy Trevor Wild of the Franklin County Sheriff's Department was stopped at the intersection of Highway 50 and Highway UU when he observed Driver make a left turn off of Highway 50 and pass between the right side of his patrol car and the stop sign. Deputy Wild pulled Driver over and noticed Driver stumble as he exited his vehicle. He smelled intoxicants on Driver's breath and observed that his eyes were bloodshot and his speech slurred. Deputy Wild gave Driver a number of field sobriety tests, all of which Driver failed. Driver was then arrested for driving while intoxicated, handcuffed, and transported in the back of the patrol car to the police station.

At the Union police station, Officer Jim Wells informed Driver of Missouri's implied consent law and administered a breath analysis test with Driver's consent. The result of the test indicated Driver had a blood alcohol content of .238% by weight.

Director revoked Driver's driving privileges pursuant to Section 302.505, *et seq.* RSMo Supp.1998, for driving while intoxicated with a prior alcohol-related enforcement contact within the preceding five years on his driving record. The revocation was upheld after an administrative hearing and Driver sought a trial de novo in circuit court.

At the trial, Deputy Wild testified to the circumstances that led to his conclusion that Driver was impaired and his subsequent arrest. He stated that he called in the traffic stop of Driver's vehicle at 10:53 p.m. and made contact with Driver within two minutes thereafter. He estimated that approximately 20-25 minutes were spent conducting the field sobriety tests and that Driver's arrest occurred thereafter. Deputy Wild testified that Driver was then transported in the back of his patrol vehicle, which contained no liquor or cigarettes, to the police station. Deputy Wild stated that he was with Driver from the time of the stop until the breath test was administered at the police station, and that Driver did not put anything in or take anything out of his mouth, nor did he smoke or vomit during this period.

Officer Wells also testified at trial for Director. He testified that he had a Type III permit to operate the BAC verifier and that he performed the actual test on Driv-

er. He identified the Department of Revenue records concerning a maintenance check performed on the BAC verifier on November 2, 1998, which included: 1) the affidavit of the custodian of records of the Union Police Department, 2) the maintenance report on the BAC verifier, 3) the certificate of analysis from Guth Laboratory, 4) the calibration test and 5) a copy of the permit for the operator of the instrument. Pursuant to the testimony, these records were admitted into evidence as Exhibit A.

He also identified the BAC log that he filled out concerning the breath test administered to Driver and was permitted to testify over a best evidence objection that the BAC verifier test result was .238%. However, the log was subsequently not admitted into evidence because a copy had not been provided to Driver's counsel prior to trial.

Officer Wells also identified Exhibit C as the checklist that he followed for the test administered to Driver, and described the procedures that he followed prior to and during the administration of the breath test. Specifically, Officer Wells stated that although he was not required to write down the time that the observation period began, he recalled that Driver was brought into the station at about 11:36 p.m. and in accordance with the regulations, he observed Driver for at least fifteen minutes. Officer Wells stated that he gave Driver the breath test at 11:52 p.m. He testified that although he did not wear a watch on the evening of the arrest, he obtained the proper time that he administered the test from the large clock next to the BAC verifier machine. Officer Wells stated that during the observation period Driver did not put anything in his mouth, smoke or vomit.

Officer Wells also identified Exhibit D as the BAC verifier receipt from the test administered to Driver. Upon questioning, he admitted that the time printed on the receipt was wrong, but according to his knowledge and training, the time component of the verifier would not impact in any way with the result of the test. When asked again what the results of the breath test were, the following exchange occurred:

[Driver's attorney]: I object, there's not been proper foundation that the machine was calibrated in accordance with regulations that were in effect. There are different certification by laboratories, is not proper that – there's no proper evidence that the machine was properly calibrated. And there is no foundation for the report, that it was done in accordance with regulations that were applicable at the time that the arrest was made.

The Court: Overruled.

[Director's attorney]: What were the results of that test?

Answer: .238 percent.

[Director's attorney]: Your Honor, I'd like to move for the admission of [Director's] Exhibit C and D.

[Driver's attorney]: Same objection, sir.

The Court: Overruled.

Driver presented no evidence at trial.

At the conclusion of the trial, the court issued a judgment setting aside Director's revocation. The court, without any additional objection from Driver or even a motion to strike Director's testimony, changed its earlier ruling and denied admission of the breath test result into evidence. The court reasoned that due to "inconsistencies" in the testimony of Director's witnesses regarding the relevant times, the fact that Officer Wells was not wearing a watch, and the fact that there was no documented evidence which reflected an entry as to when the observation period began, Director failed to establish that Driver had been observed for fifteen minutes prior to the administration of the breath analysis test as required by the Department of Health regulations. Director appeals this judgment.

We will affirm the trial court's judgment unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo.banc 1976).

In his first point, Director contends the court misapplied the law in setting aside the revocation of Driver's driving privileges because Driver did not make a proper and timely objection to the admission of the test result into evidence. Specifically, Director argues that proof of compliance with the regulation mandating a fifteen-minute observation period prior to the administration of a breath test is a foundational element for the introduction of the breath test result, and that absent a proper and timely objection by Driver, the foundational element was irrelevant to the trial court's determination as to whether Director met his burden of establishing a prima facie case for the revocation of Driver's driving privileges. Alternatively, Director contends the trial court's judgment was not supported by substantial evidence because the foundational requirements for admitting the breathalyzer results were indeed met.

Driver argues the judgment must be affirmed because substantial and competent evidence exists to support the court's determination that Director failed to properly administer the breath test to Driver due to the failure to comply with the regulation requiring a prior fifteen-minute observation period. Driver urges that in a driver's license revocation case, a trial court has the prerogative when weighing witness credibility, to accept or reject all, part, or none of the testimony of any witness. *Hawk v. Director of Revenue*, 943 S.W.2d 18, 20 (Mo.App.1997). Driver argues the trial court simply made a proper credibility determination of Director's witnesses. While we agree with Driver's recital of the law concerning our deference to a trial court's credibility determination, we disagree with its applicability in the present case.

When reviewing the revocation or suspension of a driver's license, the trial court must ordinarily determine only the following: 1) whether the person was arrested, 2) whether the arresting officer had probable cause for the arrest, and 3) whether the person's blood alcohol content was at least .10% by weight. *Tidwell v. Director of Revenue*, 931 S.W.2d 488, 490 (Mo.App.1996). Director has the burden at trial of establishing a prima facie case for the suspension or revocation of a driver's license. *Hurley v. Director of Revenue*, 982 S.W.2d 694, 696 (Mo.App.1998).

When a breathalyzer test is the method used to establish a prima facie case on the blood alcohol content issue, the proponent for its admission usually has to meet all foundational prerequisites to its admission. *Thomas v. Director of Revenue*, 875 S.W.2d 582, 583 (Mo.App.1994). To establish this foundation, Director must establish three elements: 1) the test was performed by following approved techniques and methods of the Division of Health, 2) the operator held a valid permit, and 3) the equipment and devices were approved by the Division. *Sellenriek v. Director of Revenue*, 826 S.W.2d 338, 340–41 (Mo.1992). Under 19 CSR 25–30.060, an officer giving a breath analyzer test must follow the Form # 7 checklist which requires the officer to observe the person to be administered the test for fifteen minutes before conducting the test to ensure the person does not smoke, vomit, or place anything into his mouth. *Hill v. Director of Revenue*, 985 S.W.2d 824, 828 (Mo.App. 1998).

The requirement of proof of compliance with the regulation only becomes an issue, however, if a proper, timely objection is made to the admission of the blood alcohol analysis. *Sellenriek*, at 341. Further, an objection to evidence must be sufficiently clear and definite so that a court will understand the reason therefor. *Reed v. Director of Revenue*, 834 S.W.2d 834, 836 (Mo.App.1992). An objection en-

compassing a broad range of situations that are not readily apparent does not preserve error. *Id.*

■ In the present case, although the trial court initially admitted the results of the breath test into evidence, at the close of trial, it reversed its decision and held that the results would not be admissible or considered by the court due to Director's failure to prove compliance with the fifteen-minute observation period. We find the trial court erred in so doing because Driver never made a timely objection to the admission of the breath test result on that basis.

■ A fair reading of the record reveals that Officer Wells was permitted to testify that Driver's blood alcohol content was .238% by weight when identifying the BAC log regarding Driver's breath test. Driver's only objection at that time to this testimony was that the log was a copy and therefore, not the best evidence. Thus, although the log was subsequently excluded from evidence, Officer Wells' testimony as to the result of the test was before the court without any objection as to lack of foundation. The general rule requires than an objection be timely made, and usually this necessitates that it be made at the earliest opportunity after the objectionable character of the evidence becomes apparent. *State v. Simmons,* 500 S.W.2d 325, 328 (Mo.App.1973). If the objectionable character of the evidence is apparent when offered or introduced, the objection should be made then. *Id.* An objection as to lack of foundation for Officer Wells' testimony as to the breath test result should have been made at that time.

The only colorable attempt Driver made in this regard was to object that "the report was not done in accordance with regulations that were applicable at the time the arrest was made." This objection was not timely made. Nor do we find that it was sufficiently clear and definite. The objection was broad and theoretically encompassed any number of unspecified

foundational grounds. Such an objection is not sufficient to deny the admissibility of the evidence. *Reed,* 834 S.W.2d at 836.

■ Further, Driver's objection concerning the calibration of the instrument was not sufficient to raise the issue of whether a proper observation period was conducted. Driver's failure to make a proper objection was the equivalent of making no objection, and as such, the breath test result should have been admitted, even if it could have been excluded by a proper objection. Absent a proper objection on this ground, any alleged deficiency in Director's compliance with the foundational requirement does not destroy the sufficiency of his case. *See Sellenriek,* 826 S.W.2d at 341. Accordingly, we reverse the trial court's judgment on this point.

■ In point two, Director argues the trial court erred in setting aside the revocation of Driver's driving privileges because he met his burden of proof of establishing a prima facie case, and Driver offered nothing in rebuttal. Director urges the judgment be reversed and the revocation reinstated. Upon review of the record, we find Director met the burden of proving a prima facie case. The uncontradicted evidence established Deputy Wild had probable cause to believe Driver had been driving while intoxicated. Deputy Wild testified that he observed Driver make an illegal left hand turn and after being stopped, Driver nearly fell while getting out of his car. Deputy Wild smelled intoxicants on Driver's breath and observed Driver sway as he walked. Deputy Wild further testified that Driver's speech was slurred and his eyes were bloodshot. The officer conducted several field sobriety tests which Driver failed. Driver offered no testimony to contradict this. Based upon this testimony, the officer had probable cause to arrest Driver under the circumstances.

Director also presented evidence establishing Driver's blood alcohol exceeded .10

percent. As discussed above, the court erred in denying admission of the breath test result into evidence. Thus, the uncontradicted evidence established that Driver had a blood alcohol content of .238% by weight on the evening of his arrest. Further, Driver's driving record admitted into evidence established Driver had had a prior alcohol-related enforcement contact within the preceding five years. Director carried his burden of proving a prima facie case for the revocation and Driver offered nothing in rebuttal. Accordingly, there was no evidence to support the trial court's judgment and it was against the weight of the evidence. *See Tidwell*, 931 S.W.2d at 492.

The judgment is reversed and remanded to the trial court with directions to reinstate Director's revocation of Driver's driving privileges.

MARY RHODES RUSSELL, C.J., Concurs.

ROBERT E. CRIST, Sr. J., Concurs.