Tracy E. FREDRICKSON, Respondent,

v.

**DIRECTOR OF REVENUE, STATE OF MISSOURI, Appellant.**

No. WD 59051.

Missouri Court of Appeals, Western District.

Sept. 18, 2001.

Jeremiah W. (Jay) Nixon, Atty. Gen., James A. Chenault, III, Sp. Asst. Atty. Gen., Mo. Dept. of Revenue, Jefferson City, for Appellant.

Allan D. Seidel, Trenton, for Respondent.

Before LOWENSTEIN, P.J., ULRICH, J. and HANNA, Sr. J.

LOWENSTEIN, Judge.

The Director of Revenue (Director) appeals from a judgment reinstating Tracy E. Fredrickson's driver's license, which had been revoked pursuant to § 577.041, RSMo. Cum.Supp.1999.[1] The trial court made its ruling solely on the basis the Director had not met the burden of proof that Fredrickson had refused to take the test since the officers had not proved they could have administered the test. The Director argues in his sole point on appeal that the trial court erred in setting aside the revocation of Fredrickson's driver's license because the evidence established that she refused a breath test, and whether it would have been administered properly was not an issue the Director was required to prove. Because this court finds that: 1) the evidence shows Fredrickson refused to submit to a breath test; and 2) proof of compliance with foundational requirements does not become an issue unless the Director is seeking to introduce the results of a chemical test and the driver objects, the judgment of the trial court is reversed.

### Factual and Procedural History

Fredrickson's driving privilege was revoked pursuant to § 577.041, for refusing to submit to a breath test. She filed a petition for review and a hearing was held. Deputy Troy Frakes, a reserve deputy with the Carroll County Sheriff's Department, testified at the hearing.

Deputy Frakes testified that on July 2, 2000, he was patrolling with Deputy Danny Swan and Deputy Lorrain Lester when they received a call to respond to an accident. When they arrived at the scene they found a white Pontiac Firebird in a ditch off of 65 Highway. Fredrickson was sitting in the passenger seat of the car with the door open. Deputy Frakes asked Fredrickson if she was the driver. She told Deputy Frakes that she was driving to Iowa and that she had been drinking. She also told Frakes that she had been in a fight with her husband and had gone to the Silver Saddle in Eldon, Missouri, to get away from him. She had been at-

---

1. All statutory references are to RSMo. Supp. 1999, unless otherwise indicated. This particular law relates to the refusal to submit to a chemical test.

tempting to make a U-turn when she went into the ditch.

Deputy Frakes observed that Fredrickson had alcohol on her breath and her eyes were glassy. When he asked her to get out of the car to perform the walk and turn sobriety test, she stumbled out of the car and was unable to walk by herself. Deputy Frakes also asked Fredrickson to recite the alphabet; however, her speech was so slurred it was inaudible. Deputy Frakes told Fredrickson that he had reason to believe she was under the influence of alcohol and he was placing her under arrest.

Fredrickson was transported to the Carroll County Sheriff's Department. Deputy Frakes informed Fredrickson that she was under arrest for driving while intoxicated and asked her if she would submit to a breath test. He also informed her that if she refused to take the test, her driver's license would be immediately revoked for a year and any evidence of a refusal to take the test would be used against her in a court of law. Fredrickson said "no."

Fredrickson next asked Deputy Frakes if he thought she should contact an attorney. He told her that he could not give legal counsel, but if she wanted to contact an attorney she should do so. Fredrickson called her husband to talk to him about contacting an attorney. Deputy Frakes stood outside the room where she called her husband until she started yelling into the phone. As Deputy Frakes entered the room, Fredrickson slammed down the phone. When he asked her if she had gotten the number of an attorney or if she had gotten in touch with an attorney, she replied, "No. Just do what you got to do." Deputy Frakes handed her a telephone book and asked her if she wanted to contact an attorney "even if it wasn't her own." Fredrickson said, "Well, I don't know anybody." Deputy Frakes told Fredrickson that there were attorneys listed in the telephone book and asked her again if she wanted to contact one of them. She said, "No, just do what you got to do. I want to go to bed." Deputy Frakes again asked her if she would take a breath test and she said, "no."

Pursuant to § 577.041, Fredrickson's driver's license was revoked and she filed a petition for review in the trial court. The Director appeals the trial court's judgment setting aside the revocation and reinstating Fredrickson's driver's license.

## I.

The Director argues in his sole point on appeal that the trial court erred in setting aside the revocation of Fredrickson's driver's license in that: 1) the evidence established that she refused a breath test, and 2) whether the test would have been administered properly had she agreed to take it was not an issue the Director was required to prove.

In reviewing a court-tried case, this court must sustain the judgment of the trial court unless there is no substantial evidence to support it, it is against the weight of the evidence, or it misstates or misapplies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). "To uphold the revocation of a driver's license for refusal to submit to a chemical test, the trial court shall only determine the following: 1) whether the driver was arrested; 2) whether the arresting officer had reasonable grounds to believe the driver was driving while intoxicated; and 3) whether the driver refused to submit to the test." *Brown v. Dir. of Revenue*, 34 S.W.3d 166, 169 (Mo.App.2000). The Director of Revenue has the burden of proof, and failure to satisfy the burden will result in reinstatement of a driver's license. *McMaster v.*

*Lohman,* 941 S.W.2d 813, 815–16 (Mo.App. 1997).

The Director does not dispute issues 1) and 2) set forth above, as the trial court found those issues in its favor. However, the Director contests, the trial court's findings with regard to whether Fredrickson refused to submit to the test. Specifically, the Director disagrees with the trial court's findings that: 1) Fredrickson was out of Deputy Frakes's sight just prior to him offering her the test so he would not have been able to certify that she did not smoke or have oral intake of any material during the fifteen minutes just prior to taking or refusing the test; and 2) the breath analyzer had to be set up and prepared to take Frederickson's sample before she was asked to submit to the test.

The trial court's findings on these issues are as follows:

> The Court finds a breath test cannot be offered until the Instrument power switch is turned on; the Run button pressed; when the display requests INSERT TICKET, insert evidence ticket; the subject and officers information is entered; when the display reads PLEASE BLOW and gives audible beep, take the subject's breath sample. It is then that the subject should be asked if they will take the test and if they refuse, print the ticket and mark "refused."

> Further, according to the evidence, the subject was out of the sight of the officer while she was making a telephone call to her husband just prior to the test offer made by the officer therefore the officer could not properly certify that the subject did not smoke or have oral intake of any material during the 15 minutes just prior to taking or refusing the test.

> The Court finds that until a breath test can be physically offered and pro-cessed by an authorized operating Instrument administered by an authorized person with a proper Permit issued by and in a manner approved by the state department of health as provided by Statute and state department of health Rules and Regulations, an arrested or stopped person has no opportunity to take or refuse to take the test.

> Therefore, the Court finds Petitioner did not refuse to take the breathalyzer test when offered as it was impossible to administer the test when offered.

### A. Fifteen minute observation period

 Whether Deputy Frakes observed Fredrickson for a fifteen-minute period prior to asking her to perform a breathalyzer test is not a pertinent issue in this case. In cases where the Director wants to introduce chemical test results, the Director bears the burden of establishing a *prima facie* foundation for their introduction. *Benson v. Dir. of Revenue,* 937 S.W.2d 768, 770 (Mo.App.1997). "Establishing a *prima facie* foundation requires proof that the test was performed by an operator with a valid permit on equipment approved by the Division of Health following the approved techniques and methods of the Division." *Id.* Under 19 CSR 25–30.060, an officer giving a breath test must follow a checklist which includes a requirement that the officer observe the person to be administered the test for fifteen minutes before conducting the test to ensure the person does not smoke, vomit, or place anything in his or her mouth. *Krieger v. Dir. of Revenue,* 14 S.W.3d 697, 701 (Mo.App.2000). "The requirement of proof of compliance with the regulation only becomes an issue, however, if a proper, timely objection is made to the admission of the blood alcohol analysis." *Id.*

 In this case, proof of compliance with the requirements of the checklist in

19 CSR 25–30.060 was not an issue since Fredrickson refused to take a breath test. *See Benson,* 937 S.W.2d at 770 (driver failed to provide court with authority for the proposition that a court could not make a finding that a driver refused to take a test authorized under § 577.020, unless the Director provided evidence that the test equipment was of a type approved by the Division of Health). As stated *supra,* the fifteen-minute observation requirement only becomes an issue if the Director attempts to introduce the results of blood alcohol analysis and the driver timely objects to admission of the results. Thus, the Director was not required to prove in this case that Deputy Frakes observed Fredrickson for fifteen minutes prior to her refusal to take a breath test.

### B. Refusal

 The trial court also found in its judgment that a breath test cannot be offered or refused until: the machine is turned on, the run button is pressed, the display reads "insert ticket," the evidence ticket is inserted, the subject's and officer's information is entered, the display reads "please blow," and it gives an audible beep. Again, the trial court is confusing foundational requirements with the requirements of § 577.041.4. The list of requirements that the trial court found had to be complied with before a test could be offered or refused mirrors the checklist found in 19 CSR 25–30.060. Compliance with the requirements does not become an issue unless the Director attempts to introduce into evidence blood alcohol analysis results and the driver objects to their admission. *Krieger,* 14 S.W.3d at 701. Further, in *Turpin v. King,* 693 S.W.2d 895, 896–97 (Mo.App. 1985), the court found that the findings

required under § 577.041.2[2] do not require evidence that the means for administering a chemical test "were reasonably available at the time and place of Appellant's arrest; and, that a properly qualified and licensed technician was reasonably available to administer the test."

 As stated *supra,* the trial court is only required to find three things under § 577.041.4 to uphold the revocation of a driver's license for refusal to submit to a chemical test: 1) whether the driver was arrested; 2) whether the arresting officer had reasonable grounds to believe the driver was driving while intoxicated; and 3) whether the driver refused to submit to the test. Whether the arresting officer followed the checklist is not a requirement. A refusal has been explained as follows:

> There is no mysterious meaning to the word "refusal." In the context of the implied consent law, it simply means an arrestee, after having been requested to take the breathalyzer test, declines to do so of his own volition. Whether the declination is accomplished by verbally saying, 'I refuse', or by remaining silent and just not breathing or blowing into the machine, or by vocalizing some sort of qualified or conditional consent or refusal, does not make any difference. The volitional failure to do what is necessary in order that the test can be performed is a refusal.

*Benson,* 937 S.W.2d at 770 (quoting *Spradling v. Deimeke,* 528 S.W.2d 759, 766 (Mo.1975)). In this case, Deputy Frakes testified that Fredrickson refused to take a breath test on two occasions. First, he asked her if she would submit to a breathalyzer test after he informed her: 1) she was under arrest for driving while intoxicated; 2) if she refused to take the test that her driver's license would be immediately revoked for a year; and 3) any evi-

**2.** At the time the *Turpin* case was written § 577.041.2, RSMo Cum.Supp.1984, con-

tained the requirements that are now listed in § 577.041.4.

dence of a refusal to take the test would be used against her in a court of law. Fredrickson replied, "no." Second, he asked her if she would submit to a breath test after she called her husband and abandoned her attempt to find an attorney. *Wall v. Holman,* 902 S.W.2d 329, 331 (Mo. App.1995). She again replied, "no." Fredrickson's behavior and answers are deemed a refusal to submit to a breath test.

This court holds: 1) proof of compliance with foundational requirements does not become an issue unless the Director is seeking to introduce the results of blood alcohol analysis and the driver objects; and 2) the evidence shows Fredrickson refused to submit to a breath test. Therefore, the judgment of the trial court is reversed due to an erroneous application of the law. The trial court shall enter a judgment reinstating the revocation.

All concur.