Michael W. FISCHBECK, Respondent,

v.

DIRECTOR OF REVENUE, Appellant.

No. ED 80281.

Missouri Court of Appeals,
Eastern District,
Southern Division.

Dec. 10, 2002.

John Munson Morris III, Todd S. Jones, Asst. Attorney General, Jefferson City, MO, for appellant.

David L. Mayhugh, Park Hills, MO, for respondents.

MARY R. RUSSELL, Judge.

The Director of Revenue ("Director") appeals from a judgment of the St. Francois County Circuit Court reinstating the driving privileges of Michael W. Fischbeck ("Driver"). Driver's license was revoked pursuant to section 577.041 RSMo 2000,[1] after he refused a breathalyzer test. Director seeks reversal of the reinstatement, claiming that she satisfied the requirements for revocation under section 577.041. We reverse and remand.

On January 24, 1999, Bonne Terre Police Office Jasen Crump ("Officer") pulled Driver over after observing him make an illegal turn. When asked for his license and registration, Driver indicated that his license was suspended. During his observation of Driver, Officer noticed that he swayed and was unsteady on his feet, that there was a strong odor of alcoholic beverages on his breath, that his eyes were watery and glassy with dilated pupils, and that his speech was slurred. When Officer asked Driver if he had been drinking, he responded affirmatively. After Driver failed two field sobriety tests, Officer placed him under arrest for driving while intoxicated.

At the station, Officer informed Driver of his Miranda rights and read him Missouri's implied consent instructions. Specifically, Officer told Driver that (1) he was under arrest for driving while intoxicated, (2) to determine the alcohol content of his blood, the officer was requesting that Driver submit to a chemical test of his breath, (3) refusal to take the test would result in an immediate revocation of his driver's license for one year, and (4) evidence of the refusal would be used against him in a court of law. Driver was then asked whether he would take the breath test, and he refused.

Moreover, Officer placed an "x" by the box that states:

> I have reasonable grounds to believe that the arrested person was operating a motor vehicle while in an intoxicated condition, and I did then and there request the arrested person to submit to a chemical test for the purpose of determining the alcohol/drug content of his/her blood, and did then and there inform the arrested person that evidence of his/her refusal to take the test may be used against him/her and that his/her driver's license shall immediately be revoked for one year upon his/her refusal to take the test, and that the arrested person did, in fact, then and there, refuse to submit to the test(s).[2]

---

1. All future statutory references are to RSMo 2000 unless otherwise indicated.

2. Driver argues that the photocopy of the alcohol influence report presented by Director was obscured and it was, therefore, unclear whether Officer marked the box which reads "Chemical Test Refusal (Officer Must Mark Box If Subject Refused Test)." While we agree that portions of the photocopy are illegible, we are able to discern an "x" next to the box indicating Officer's knowledge and agreement with the above statement contained in the box.

Based upon his refusal to submit to a breathalyzer test, Director revoked Driver's driving privileges for one year pursuant to section 577.041. Driver filed a petition to review the revocation of his license with the Circuit Court of St. Francois County. At the hearing, Director submitted the case on the records, introducing Driver's driving record, the alcohol influence report, and Officer's notarized report. Driver testified that he overheard Officer state, on multiple occasions, that the breathalyzer was not working properly. If the machine had been functioning properly, Driver testified he would have consented to the test.

In its judgment staying revocation of Driver's license, the trial court found that (1) Director failed to produce the requisite breathalyzer maintenance report and the certificate of analysis for the alcohol reference solution, (2) Driver had smoked a cigarette within 15 minutes of refusing the test, and (3) Driver refused the test only after Officer indicated that the breathalyzer was not working correctly. Because Director failed to sustain its burden of proof, the trial court ordered reinstatement of Driver's driving privileges. Director now appeals from that judgment.

In her sole point on appeal, Director claims the trial court erred in setting aside the revocation of Driver's driving privileges because her evidence established the requisite findings necessary for revocation under section 577.041 in that Driver was arrested, Officer had reasonable suspicion to believe that Driver was driving while intoxicated, and Driver refused to consent to a chemical test of his blood alcohol content.

■ We will affirm the trial court's judgment unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Fredrickson v. Dir. of Revenue*, 55 S.W.3d 460, 463 (Mo.App.2001); *Buckley v. Dir. of Revenue*, 4 S.W.3d 152, 154 (Mo.App.1999). To uphold the revocation of a driver's license for refusal to submit to a chemical test, the trial court must only determine whether the driver was arrested, whether the arresting officer had reasonable grounds to believe the driver was driving while intoxicated, and whether the driver refused to submit to the test. *Fredrickson*, 55 S.W.3d at 463. Director has the burden of proof, and failure to satisfy the burden will result in reinstatement of a driver's license. *Id.*

■ The trial court judgment setting aside Driver's revocation found that Director did not sustain her burden in that she failed to produce the requisite breathalyzer maintenance report and the certificate of analysis for the alcohol reference solution, and there was evidence that Driver smoked a cigarette within 15 minutes of refusing the test. Proof that the breathalyzer was properly maintained and that the 15–minute observation period was heeded are immaterial issues in this case as Driver refused to take the breath test. *See Fredrickson*, 55 S.W.3d at 464–65; *Orr v. Dir. of Revenue*, 54 S.W.3d 201, 202 (Mo.App. 2001). "Only when a breathalyzer test is offered to establish blood alcohol content is the director obligated to prove foundational prerequisites, such as proper maintenance of the breathalyzer machine." *Orr*, 54 S.W.3d at 202.

The only issues that must be determined by the trial court are that the driver was arrested, the arresting officer had reasonable grounds to believe the driver was driving while intoxicated, and that the driver refused to submit to a chemical test. *Fredrickson*, 55 S.W.3d at 463. Driver does not dispute that Director presented sufficient evidence to establish that Driver was arrested and that Officer had reason-

able grounds to believe that Driver was driving while intoxicated. The only issue for us to determine is whether Driver refused to submit to a chemical test of his blood alcohol content. Regarding this issue, the trial court found that Driver refused the test only after Officer indicated that the breathalyzer was not working properly.

A refusal has been defined as follows:

> There is no mysterious meaning to the word "refusal." In the context of the implied consent law, it simply means an arrestee, after having been requested to take the breathalyzer test, declines to do so of his own volition. Whether the declination is accomplished by verbally saying, "I refuse," or by remaining silent and just not breathing or blowing into the machine, or by vocalizing some sort of qualified or conditional consent or refusal, does not make any difference. The volitional failure to do what is necessary in order that the test can be performed is a refusal.

*Id.* at 465.

■ Driver argues that statements made by Officer to the effect that the breathalyzer was not working properly affected his decisional process and diminished his ability to make an informed choice as to whether to submit to the test. The alcohol influence report and Driver's own testimony established that Driver was asked to take a breathalyzer test, that he refused to do so, and that he was informed and understood that his refusal would result in the revocation of his license for a year. We find that this qualifies as a refusal under the weight of authority defining a refusal as "the volitional failure to do what is necessary in order that the test can be performed." *See id.*

■ If Driver was confused or did not understand his rights based upon the functioning of the breathalyzer, he should have expressed his confusion to the officer. A driver who has been advised of his rights under the Implied Consent Law, but declines to take the test, is deemed to have refused the test unless he objectively and unequivocally shows he does not understand his rights and the warning concerning the consequences of refusal and, thereafter, he was denied clarification. *Spradling v. Deimeke*, 528 S.W.2d 759, 766 (Mo.1975); *Duffy v. Dir. of Revenue*, 966 S.W.2d 372, 382 (Mo.App.1998).

"A lack of understanding not made apparent to the officer is of no consequence." *Spradling*, 528 S.W.2d at 766; *Duffy*, 966 S.W.2d at 382. There is nothing in the record to suggest that Driver informed Officer he was refusing the test based upon Driver's concern over the proper functioning of the breathalyzer.

■ Driver also argues that his license could not be revoked for refusing to consent because Officer's implied consent warning was statutorily insufficient. Driver cites to the following question posed to him during cross-examination by the state:

> [State]: Okay. And the officer did indicate to you that if you didn't take this test you would lose your license for up to a year?
>
> [Driver]: Yes, he did.

Driver alleges that this statement suggested that Driver could lose his license for any period of time up to a year, which could include a lesser period of time than one year.

In his petition to review the revocation of his license, Driver did not raise the issue that the warnings he was given were statutorily insufficient. As this issue was not raised before the trial court, Driver is estopped from raising it for the first time

on appeal. *Matthews v. Dir. of Revenue,* 72 S.W.3d 175, 178 (Mo.App.2002) (*citing Walker v. Walker,* 954 S.W.2d 425, 428 (Mo.App.1997)).

Nevertheless, we find that this question posed by the state during cross-examination was simply a paraphrase of the implied consent warning and was not meant to track verbatim the language used by Officer. If Driver felt that the warning given was inadequate, then he would have raised it in his petition to review the revocation and explored Officer's statements during direct examination of Driver. Moreover, the alcohol influence report indicates that Officer told Driver that if he refused to take the test, his license would be immediately revoked for one year. Point denied.

Inasmuch as Driver was advised of his rights, received an adequate warning as to the consequences of refusal, and declined to take the chemical test, we find that this constituted a refusal under the Implied Consent Law sufficient to revoke his driving privileges pursuant to section 577.041. Therefore, the judgment of the trial court is reversed, and we remand for reinstatement of the revocation of Driver's driving privileges.

LAWRENCE E. MOONEY, C.J., and ROBERT G. DOWD, JR., J., concur.