Derrick O. CARR, Respondent,

v.

DIRECTOR OF REVENUE, DRIVERS LICENSE BUREAU, Appellant.

No. WD 60617.

Missouri Court of Appeals,
Western District.

Dec. 10, 2002.

Motion for Rehearing and/or Transfer to Supreme Court Denied Jan. 28, 2003.

James A. Chenault, II, Jeremiah W. (Jay) Nixon, Attorney General, Jefferson City, MO, for appellant.

Bob J. Hiler, Kansas City, MO, for respondent.

Before PAUL M. SPINDEN, P.J., PATRICIA A. BRECKENRIDGE and THOMAS H. NEWTON, JJ.

THOMAS H. NEWTON, Judge.

The Director of Revenue raises a challenge to the ruling of the trial court, which reinstated Derrick O. Carr's driving privileges. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Mr. Carr was arrested at 1:50 a.m. on April 21, 2000, for driving while intoxicated (DWI). After a field sobriety test, the arresting officer conducted a breath analyzer test, and the results showed a blood alcohol content of 0.106%. Mr. Carr was issued a suspension notice of his driver's license.

Mr. Carr filed a petition challenging this suspension in Jackson County Circuit Court on August 9, 2000. The trial court ruled that it did not have subject matter jurisdiction and dismissed the petition. We reversed the ruling of the trial court, remanding the case to be heard on its merits. *See Carr v. Dir. of Revenue,* 49 S.W.3d 248, 249 (Mo.App. W.D.2001).

On September 20, 2001, a hearing was held on Mr. Carr's petition. At the hearing, the Director called the arresting officer, Greg Harmon. Officer Harmon testified about the circumstances of the arrest and the administration of the breathalyzer test. During the fifteen minutes preceding the test, Officer Harmon stated that he observed Mr. Carr and that Mr. Carr did not go to the bathroom, eat, drink, smoke, vomit, or place anything in his mouth.

Mr. Carr testified at the hearing too. During his testimony, Mr. Carr directly contradicted the testimony of Officer Harmon in regard to the events that occurred before he took the breathalyzer test. Specifically, Mr. Carr stated that prior to taking the test, he was placed in a holding cell where an unknown inmate allowed him to smoke his cigarette. Soon thereafter, he stated that he was taken to a room where he was allowed to go to the restroom. While in the restroom, it was Mr. Carr's testimony that he had "a piece of butterscotch candy." Finally, Mr. Carr stated that all of these activities occurred outside of the presence of Officer Harmon just before his breathalyzer test and that the officer had not observed him for the fifteen minutes immediately preceding his breathalyzer test.

Mr. Carr, on cross-examination, admitted to consuming a beer and a shot of whiskey on the night that he was arrested for the DWI violation. At the close of the evidence, the trial court rendered a judgment in favor of Mr. Carr, reinstating his driving privileges and ordering "that said

revocation be held void, and of no force or effect."

The Director brings two points on appeal. In Point I, it is urged that "the court below erred in setting aside the suspension of [Mr. Carr's] driving privileges because the court lacked subject matter jurisdiction, in that [Mr. Carr's] petition failed to state a claim for which relief could be granted." Point II alleges that the trial court erred in setting aside the suspension of Mr. Carr's driver's license because the Director successfully "established a *prima facie* case under § 302.505 which [Mr. Carr] failed to rebut."

## II. STANDARD OF REVIEW

The appropriate standard of review in this case was stated in *Cox v. Director of Revenue,* 974 S.W.2d 633, 635 (Mo.App. W.D.1998):

> We will review the circuit court's judgment, rather than the Director's decision, according to the standard set out for judge-tried cases, Rule 73.01 and *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976). Accordingly, we will affirm the judgment unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law.

*Id.* (citations omitted).

## III. LEGAL ANALYSIS

### A. Subject Matter Jurisdiction

 In Point I, the Director alleges that the trial court erred in reversing the revocation of Mr. Carr's license "because the court lacked subject matter jurisdiction, in that [Mr. Carr's] petition failed to state a claim for which relief could be granted." The Director argues that the trial court erred in granting relief to Mr. Carr because he cited the wrong statute in his petition, and the trial court issued its judgment under this same incorrect provision of law. There can be no doubt that this statutory mistake occurred. Mr. Carr, in petitioning the court to reinstate his driving privileges, cited to § 577.041,[1] the statute that controls the criminal procedures and punishment when an individual refuses to submit to a "chemical test" (in this case a breathalyzer test). *See* § 577.041. Of course, this is problematic because of the fact that Mr. Carr *agreed* to taking the breathalyzer test, and, therefore, his license was not suspended pursuant to this part of the statute. Rather, his license was suspended under § 302.505 for failing the breathalyzer test (he tested at 0.106%). Therefore, the proper means for him to challenge the restriction of his driving privileges was § 302.535. Compounding the problem is the fact that the trial court cited to § 577.041 in its judgment.

On appeal, Mr. Carr concedes that this mistake occurred; however, he urges that it need not warrant reversal of the trial court's judgment. In making this argument, he states that "[w]hile Section 577.041 was mistakenly referenced as the controlling statute section, a reading of said Application as to the allegations for requesting the same *does* clearly demonstrate that it was being made because of an administrative suspension due to alleged excessive blood alcohol content as per Section 302.535." Unfortunately, Mr. Carr cites *no* authority to support this reasoning or its ultimate conclusion. In his brief, Mr. Carr merely agrees with the Director that this issue is one of first impression.[2]

---

1. All statutory references are to RSMo 2000, unless otherwise indicated.

2. "[The Director] correctly states that '... (W)hether it is improper for a court to grant relief in actions involving a driver's license on

■ This case does seem to present an issue of first impression. Even though our case is a civil matter, one analogous, reoccurring situation stands out in order to assist this court in resolving this issue: inaccurate and misleading indictments. There is case law that deals with the scenario where a prosecutor has failed to cite the correct statute in the criminal information charging a defendant. "Citing the incorrect statute in the information does not necessarily render the information insufficient." *State v. Taylor*, 929 S.W.2d 209, 218 (Mo. banc 1996) (citing *State v. LaPlant*, 673 S.W.2d 782, 785 (Mo. banc 1984)). "The primary purpose of an information is to give defendant sufficient notice of the charge to allow adequate preparation of a defense and avoid retrial on the same charges in case of acquittal." *Id.* Indeed, this Court has used this proposition of law to uphold criminal convictions of defendants because of various errors committed by the prosecutor or the trial court. *See State v. Boyd*, 927 S.W.2d 385, 389–90 (Mo.App. W.D.1996) (holding that defendant's sentence as persistent DWI offender was proper notwithstanding the fact that the State failed to cite the effective date the statute became law); *State v. Henderson*, 750 S.W.2d 507, 512–13 (Mo. App. W.D.1988); *see also State v. Cusumano*, 819 S.W.2d 59, 61 (Mo.App. E.D. 1991) (upholding defendant's conviction under § 304.010 even though he should have been charged under § 304.009).

A parallel between this doctrine and our seemingly novel issue exists: an error was made in the civil pleadings submitted before the court but not one significant enough that a party to the proceeding was mislead or confused as to what the substance of the argument was or what legal impact that argument would have. In this case, everyone privy to Mr. Carr's petition was aware of the relief he was requesting: to have his suspended license reinstated. This can be seen quite clearly from Mr. Carr's petition and the Director's opposing briefs. Moreover, the substance of the error raised by Mr. Carr was stated in the petition:

> [T]he Officer, when he took [Mr. Carr] to the station, allowed him to go to the bathroom, and he smoked a cigarette, and also ate a piece of butterscotch candy, and the Officer also brought toilet paper to [Mr. Carr], and then when the Officer realized that [Mr. Carr] had smoked a cigarette and told him he had eaten butterscotch candy, the Officer told him to get off the stool, and they went immediately and a test was taken, without the 15 minute wait that is required for a person's breath test to be taken, especially since [Mr. Carr] had smoked a cigarette and ate candy, and the results of the breath test should not be received in evidence, and [Mr. Carr's] driver's license should be reinstated, by the Court.

Also, in his petition, Mr. Carr's attorney cited to the statute dealing with suspended licenses as a result of refusing to take a breathalyzer test instead of citing the applicable statute pertaining to the situation where one fails the breathalyzer test. The Director argues that this mistake made by Mr. Carr and the trial court was so egregious as to rob the court of subject matter jurisdiction. In order to support this contention, the Director cites to *Adkisson v. Dir. of Revenue*, 891 S.W.2d 131, 132–33 (Mo. banc 1995), for the proposition "that a petition seeking relief from a non-existent license action fails to state a claim and therefore fails to vest the court with subject matter jurisdiction." But *Adkisson* is

grounds that were raised in the petition, when Appellant is not seeking to take away the license on such grounds, appears to be a question of first impression.' "

distinguishable from our case. In *Adkisson*, petitioner received a letter from the Director that was a "Notice of Loss of Driving Privilege" pursuant §§ 302.304.1 and .6, notifying him of the suspended status of his license because he "had accumulated twelve points within a twelve-month period." *Id.* at 131–33. It was held, however, "[b]ecause his driving privileges were revoked, appellant was not entitled to apply for a new license until the termination of the period of revocation." *Id.* at 133. Accordingly, because of the unique posture of the case, defendant *had no right to appeal his case at the time he filed his petition. Id.* But the same cannot be said for Mr. Carr—he undisputedly had a legal right to appeal the Director's suspension of his license. *See Carr,* 49 S.W.3d at 249. Therefore, we hold that the deficiency of Mr. Carr's petition is not want of subject matter jurisdiction before the trial court. That element was present, and his failure to cite the appropriate statute in bringing his petition does not eliminate his right to petition the court.

The Director also cites *Cox,* 974 S.W.2d at 635, for the rule that "it is improper for the court to grant relief in actions involving a driver's license on grounds not raised in the Petition for Review." While this is a true proposition of law, it has no bearing on our case. In *Cox,* petitioner brought an action to review the Director's revocation of his driver's license but only "sought limited driving privileges due to hardship." *Id.* at 635. Notably, in his petition, "Mr. Cox did not challenge the Director's purported ten-year denial of eligibility for reinstatement of his license." *Id.* Accordingly, in *Cox,* we reversed the trial court's ruling that allowed Mr. Cox an early reinstatement of his driver's license because this was not the relief requested in his petition. *Id.*

Our case is distinguishable from *Cox* because the ground for relief raised in Mr. Carr's petition (to have his license reinstated) was consistent with the relief granted by the trial court. It is true that Mr. Carr failed to reference the correct statutory provision in making this request in his petition, but this situation is different from the one in *Cox* where the petitioner simply failed to make the request for relief in his petition that was ultimately granted by the trial court. As such, while it may be "improper for the court to grant relief in actions involving a driver's license on grounds not raised in the Petition for Review," it is clear that this holding in *Cox* is inapplicable to our case. *Id.* Point I is denied.

## B. Rebuttal of the Director's *Prima Facie* Case

■■■ In Point II, it is contended by the Director that "the court below erred in setting aside the suspension of [Mr. Carr's] driving privilege because the suspension action was proper, in that [the Director] established a *prima facie* case under § 302.505 which [Mr. Carr] failed to rebut." "To suspend or revoke driving privileges for an alcohol-related offense, the Director must prove by a preponderance of the evidence that probable cause existed to arrest the driver for driving in violation of an alcohol-related offense and that the driver's BAC equaled or exceeded .10% by weight." *Hill v. Dir. of Revenue,* 985 S.W.2d 824, 829 (Mo.App. W.D.1998) (citing *Collins v. Dir. of Revenue,* 691 S.W.2d 246, 252 (Mo. banc 1985)). Once the Director makes a prima facie case for suspension, the burden shifts to the driver to rebut the evidence. *See Testerman v. Dir. of Revenue,* 31 S.W.3d 473, 480 (Mo. App. W.D.2000). "To rebut a *prima facie* case for suspension or revocation under § 302.505, the driver is required to present specific evidence; merely pointing out in-

consistencies in the Director's case is not sufficient." *Id.*

In bringing this point, the Director focuses on the later half of this revocation test, that is, whether the Director's *prima facie* case (that Mr. Carr's blood alcohol level (BAC) exceeded .10% by weight) was rebutted by Mr. Carr.[3] Under 19 CSR 25–30.060, an officer giving a breath analyzer test must follow the Form #7 checklist which requires the officer to observe the person to whom the test is to be administered for fifteen minutes before conducting the test to ensure the person does not smoke, vomit, or place anything into his mouth. *Id.* at 480; *see also Krieger v. Dir. of Revenue,* 14 S.W.3d 697, 701 (Mo. App. E.D.2000). To rebut the Director's prima facie case, specifically the BAC element, Mr. Carr presented evidence at trial from which the trial court could reasonably infer that the police failed to comply with 19 CSR 25–30.060 in a variety of ways. First, Mr. Carr contends that this aforementioned rule was not satisfied because the police did not observe him for the fifteen minutes that preceded the test. Moreover, during this time period, it is argued that this regulation was further violated because Mr. Carr (1) smoked a cigarette, and (2) sucked on a piece of candy. Based on the trial court's judgment entry, it is clear that the court accepted Mr. Carr's arguments.

The Director, however, contends that the evidence was insufficient for the trial court to find that the Director's *prima facie* case had been rebutted. In supporting this argument, that the trial court erred because it was conclusively proven that Mr. Carr's BAC level exceeded the legal limit, the Director cites several analogous cases where this Court reversed the trial court after finding that the evidence presented by the driver was insufficient for the trial court to conclude that these regulations had been violated so that it justified reinstating the individual's driving license. *See Testerman,* 31 S.W.3d at 480; *Duing v. Dir. of Revenue,* 59 S.W.3d 537, 539–40 (Mo.App. E.D.2001); *Krieger,* 14 S.W.3d at 702.

But one should not conclude, from the aforementioned case law alone, that this showing was not made by Mr. Carr. As previously mentioned, "[t]o rebut a *prima facie* case for suspension or revocation under § 302.505, the driver is required to present specific evidence; merely pointing out inconsistencies in the Director's case is not sufficient." *Testerman,* 31 S.W.3d at 480. In *Testerman,* a driver was successful in petitioning the trial court to reinstate her driving privileges after testifying at her hearing that the regulations of 19 CSR 25–30.060 had been violated in light of the fact that it was possible she had consumed a peppermint candy fifteen minutes prior

---

**3.** Mr. Carr disputes that the Director in fact established a *prima facie* case of his DUI violation. But this bare assertion is without merit. The Director proved all of the necessary elements to make this showing, and Mr. Carr has failed to successfully point to which element is lacking. In particular, Mr. Carr's attempts in arguing that the police's failure to comply with 19 CSR 25–30.060 demonstrates a lack of proof to establish a *prima facie* case that his blood alcohol level exceeded 0.10% are unavailing. As the Director points out, Mr. Carr failed to make a specific objection in this regard at the time this BAC evidence was

admitted. Therefore, this argument holds no weight in the context of whether the Director established a *prima facie* case of a § 302.505 violation. *See Krieger v. Dir. of Revenue,* 14 S.W.3d 697, 702 (Mo.App.2000) ("Absent a proper objection on this ground, any alleged deficiency in Director's compliance with the foundational requirement does not destroy the sufficiency of his case."). However, this evidence is relevant in determining whether Mr. Carr was successful in *rebutting* the Director's *prima facie* case. *See Testerman,* 31 S.W.3d at 478, 480; *see also Milligan v. Wilson,* 78 S.W.3d 215, 221 (Mo.App. W.D.2002).

to her breathalyzer test. *Id.* at 475. In reversing the trial court, we held that the trial court "had to resort to an inference that was unreasonable in that it relied on speculation, which it could not do," in concluding that the defendant in question had actually been sucking on a mint fifteen minutes prior to taking the breathalyzer test. *Id.* at 483. But what is notable about *Testerman* is that the defendant in that case stated that she had been sucking on a mint at some time after her arrest, but could not remember whether it occurred fifteen minutes preceding the test. *Id.* We observed the following in regard to this evidence:

> However, without engaging in pure speculation, there is no way to determine whether the mint was still in her mouth during the observation period, 2:02 a.m. to 2:17 a.m. [when her breathalyzer test was given]. The respondent did not testify that the mint was still in her mouth during this time nor did she testify as to basic underlying facts which would have allowed the trial court to reasonably infer that it was still there, such as how big the mint was or the average time it took her to finish one.

*Id.*

Our case is distinct and different from *Testerman* in that Mr. Carr did testify to actual facts that allowed the trial court to conclude, without speculation, that 19 CSR 25–30.060's procedures had not been followed. This testimony of Mr. Carr is as follows:

> Q. Okay. Did he observe you for 15 minutes before he took the test?
>
> A. Not observed, no.
>
> Q. And then you went and took the test?
>
> A. Yes.
>
> Q. And the report showed that you checked .106 on the breath test?

> A. Yes.
>
> Q. Uh-huh. But as far as you're concerned, Mr. Carr, that Mr.—Officer Harmon did not watch you for the whole 15 minutes before he gave the breath test; is that correct?
>
> A. Yes.
>
> Q. And how long was it after you go out of the restroom that you took the test?
>
> A. Oh, immediately. No, they was mad.
>
> Q. Huh?
>
> A. They got mad.
>
> Q. How long was it before you—at the time you left the bathroom until you took the test?
>
> A. Like immediately, you know, "Get up. Get up, you're through, right now. Come on, we're going to take the test."
>
> Q. And you went and took the test?
>
> A. Yes.

Officer Harmon directly contradicted this testimony by Mr. Carr; he stated during his testimony that he had observed Mr. Carr for the full fifteen minutes preceding his breathalyzer test. "However, in determining whether [Mr. Carr] rebutted the Director's *prima facie* case, the trial court was free to disregard this evidence and believe [Mr. Carr's] evidence on this issue." *Id.* at 481. "As such, the issue in question does not turn on credibility, but whether the evidence was such that the trial court could have reasonably inferred" that "Mr. Carr had in fact gone unobserved for the fifteen minutes preceding his breathalyzer test." *Id.* Because of Mr. Carr's explicit testimony, we hold that, unlike the trial court in *Testerman,* that Mr. Carr was not observed for the requisite fifteen-minute period. Moreover, there was evidence before the trial court in which it could have concluded that Mr.

Carr ingested substances (namely, the butterscotch candy and cigarette smoke) during the "observation period," further violating the requirements of 19 CSR 25–30.060.[4] Accordingly, this evidence, taken together, was a sufficient basis for the trial court to conclude that the Director's *prima facie* case for suspension of Mr. Carr's driving license under § 302.505.1 had been rebutted.

■ The Director disputes this conclusion by stating that Mr. Carr "offered no evidence that having the butterscotch in his mouth at some point prior to the test contaminated the result [and a]s such, he failed to meet his burden of rebutting [the Director's] *prima facie* case." To support this contention, that one must demonstrate that the failure to follow the requirements of 19 CSR 25–30.060 "contaminated" the results of the BAC test in order to rebut the Director's *prima facie* case, the Director cites to cases decided by our sister jurisdiction in the Eastern District. *See Duing*, 59 S.W.3d at 539–40; *Hansen v. Dir. of Revenue*, 22 S.W.3d 770, 773–74 (Mo.App. E.D.2000).

4. This testimony was as follows:
Q. Okay. And—And when you went to the—when you were in the holding cell or—or restroom, did you have anything in your mouth, or—or do anything?
A. When I went to the restroom I had a piece of butterscotch candy, you know. The guy that brought the toilet paper in there thought I was chewing some crack or something like that. He said, "Where did you get that from?" or "Why are you chewing candy? Spit it out. Spit it out. And get up, get up. You're through using it."
Q. Okay. But that wasn't Officer Harmon?
A. Oh, I don't know whether it was him or his partner. His partner had a real bad attitude that night.
Q. When you were in the holding cell did you do anything there that was—
A. Got a couple of puffs, that's all.
Q. Someone in the holding cell was—was puffing a cigarette, smoking a cigarette?

The Eastern District, in *Duing*, made express and unambiguous its requirement that, in order for a petitioner to be successful in challenging the suspension of his driver's license under § 302.535, one had to make a showing that any violation of 19 CSR 25–30.060 "contaminated the results of the breath analysis test." 59 S.W.3d at 540. In *Duing*, petitioner testified at his reinstatement hearing that he had chewing tobacco in his mouth prior to being stopped by the police for a DWI violation, and the tobacco remained inside his mouth during the breath analysis test. *Id.* at 538. The trial court reinstated petitioner's license in light of the fact that 19 CSR 25–30.060 had been violated because tobacco was in his mouth during the breath test. *Id.* at 539. The Eastern District reversed and remanded the case, holding that "the trial court exceeded its authority in reinstating Driver's driving privileges in the absence of . . . [an] evidentiary basis upon which to assume the tobacco contaminated the results of the breath analysis test, especially when neither party produced any evidence, scientific or otherwise, to support this conclusion." *Id.* at 540.[5]

A. Some gay guy.

5. It should be noted that the Eastern District's holding was also seemingly based on the fact that the Court was skeptical that a driver having tobacco in his mouth while taking the BAC test is a *per se* violation of 19 CSR 25–30.060's procedural requirements. *Id.* at 539–40. In *Duing*, it was argued by the Director that such a procedural violation had not occurred because petitioner did not put anything or take anything out of his mouth during the fifteen minutes immediately preceding his breathalyzer test because the tobacco was inserted in the driver's mouth prior to being detained by the police. *Id.* "When the record reflects the person tested has not placed anything into or taken anything out of the mouth during the observation period prior to the administration of the breath analysis test, the court must admit the test results since the officer correctly administered the

To the extent that they hold that a finding by the trial court that 19 CSR 25–30.060's "observation period" requirements were not followed is an insufficient basis by itself as a matter of law for the trial court to reinstate an individual's driver's license under § 302.535, we decline to follow the Eastern District's holdings in *Duing* and *Hansen.*[6] Drinking and driving experts are resolute that this fifteen minute waiting period plays a critical role to insure that the breathalyzer test achieves an accurate result. *See* 3 Donald H. Nichols & Flem K. Whited III, Drinking/Driving Litigation Criminal and Civil § 19:9 (2d ed. 1998) ("The arresting officer or Breathalyzer operator must continuously observe the subject during the fifteen to twenty minutes prior to the test. This waiting period is necessary to reduce interference from alcohol or other substance that may have been present in the mouth ... The presence of such compounds in the mouth at the time of breath collection will produce an extremely high breath alcohol value that is far from indicative of alveolar breath alcohol concentration."); 4 David L. Faigman et al., Modern Scientific Evidence, § 33–2.3.2(c) (2002) ("Some foreign objects in the mouth, such as chewing tobacco, may trap alcohol and affect the breath test ... If the above are ruled out by observation, and the 15 minute waiting period is observed and documented, any interference with a valid test should not

have occurred."); Harvey M. Cohen & Joseph B. Green, Apprehending and Prosecuting the Drunk Driver § 7.04(11)(e) (2002) ("The defendant should be observed for 15 to 20 minutes prior to blowing into the breath-alcohol analyzer to ensure that he or she ingests nothing and brings nothing up from the stomach (by burp, belch, regurgitation, etc.), since these can affect the accuracy of the test.").

It is our belief that the "observation requirement" is critical to determining whether in fact an individual has driven while illegally intoxicated. The results of a breathalyzer test are given much weight, as they should be, in our judicial system. However, in order to insure the veracity and precision of this testing device does not become undermined, it is imperative for the police to follow minimum administrative guidelines in observing the driver before the test is given. We believe that such a requirement imposes a relatively insignificant administrative burden on the police, and in any event, that its benefits in instilling confidence in the testing results far outweigh any inconvenience.[7]

The administrative burden on the State, to follow the observation period, is far less significant than the burden would be on a defendant to prove, within a degree of scientific certainty, that the police's failure to observe such requirements *in fact* "con-

---

test." *Id.* Notwithstanding this analytical side issue, with which we do not agree, it is clear that the majority's opinion in *Duing* rests mainly on the fact that no "contamination" evidence was proffered by the petitioner at his hearing in regard to the chewing tobacco. *Id.*

6. The court en banc reviewed and approved this matter.

7. In no way should today's ruling be seen to have any impact on this court's prior holding in *Hill*, in which we stated that "where the officer administering the breath analysis test observes the person whose breath is being

tested for 15 minutes or more and said person does not smoke, vomit, or place anything into her mouth during such observation period, the requirement is satisfied, and an additional observation period of 15 minutes between subsequent tests is not required." 985 S.W.2d at 828–29. There can be no doubt that a second "observance period" is superfluous and, unnecessary when a driver has already been observed for one such period and, without leaving the presence of the authorities, is requested to take a second breath analyzer test for whatever reason. *Id.* at 829.

taminated the results of the breath analysis test." *Duing,* 59 S.W.3d at 540. This problem can be seen in the following passage from a treatise on evidence:

"[E]ven if the defense has a qualified scientist on the stand, there still is no certainty that the judge is even willing to seriously consider scientific explanations that seem to fly in the face of long time acceptance by the courts of breath testing to determine alcohol impairment ... [Moreover] where the test result was at or only slightly above the presumptive intoxication level, then the issue of whether the person was truly above .10 becomes questionable. In truth, the accurate result may just as well be below .10 as it may be above that level."

*See* ANDRE A. MOENSSENS ET AL, SCIENTIFIC EVIDENCE IN CIVIL AND CRIMINAL CASES § 3.05, (4th ed.1995). By setting up minimum standards to which the police must adhere when submitting an individual to a breathalyzer test, the guesswork of whether the BAC level of any given test is an accurate representation of that individual's actual level is significantly decreased. Leaving it to the defendant to prove within any degree of certainty that such a violation of the waiting period *in fact* "contaminated" the result would likely cause an insurmountable evidentiary hurdle wherein no such violation would rise to the level of warranting reinstatement of the individual's driver's license.

Make no mistake, applied to our case, we cannot say that the "waiting period" requirements were not in fact observed by the police. Only the trial court can make that finding of fact. But if, as is evident in our case, such a finding is made, no further evidence need be adduced in order for the trial court to reinstate an individual's driving license on the basis that the driver had rebutted the Director's *prima facie*

case. In our case, Mr. Carr's BAC level tested 0.106%, only slightly above the legal level. Therefore, here in particular it was critical for the police to insure that no foreign objects influenced Mr. Carr's BAC level because it involved such a fine line distinction between what constituted a permissible level of blood alcohol content. Here, without the baseline level of procedural requirements being followed before Mr. Carr's BAC was taken, we can have no confidence in the accuracy of the test results. Therefore, we uphold the ruling of the trial court that reinstated Mr. Carr's driving license. Point II is denied.

### IV. CONCLUSION

After reviewing the record on appeal, and the briefs of the parties, we conclude that the judgment of the trial court should be affirmed.

PAUL M. SPINDEN, P.J., and PATRICIA A. BRECKENRIDGE, J., concur.