

# In the
# Missouri Court of Appeals
# Western District

| | | |
|---|---|---|
| ERIC CHRISTOPHER COURTNEY, | ) | |
| | ) | |
| Appellant-Respondent, | ) | WD77646 Consolidated with |
| | ) | WD77657 |
| v. | ) | |
| | ) | OPINION FILED: October 27, 2015 |
| DIRECTOR OF REVENUE, | ) | |
| | ) | |
| Respondent-Appellant. | ) | |

**Appeal from the Circuit Court of Henry County, Missouri**
The Honorable Wayne P. Strothmann, Judge

Before Division Four: Alok Ahuja, Chief Judge, Presiding, Gary D. Witt, Judge and
John M. Torrence, Special Judge

The Director of Revenue (the "Director") appeals a trial court judgment setting aside the revocation of Eric Courtney's ("Courtney") driving privileges. The Director argues that the trial court erred in excluding the results of Courtney's breath test for the stated reason that there was no evidence that the simulator for the breath testing device had been calibrated against a National Institute of Standards and Technology ("NIST")-approved thermometer in connection with its maintenance as required by the Department of Health and Senior Services ("DHSS"). Courtney cross appeals, arguing that the trial court erred in finding that the breath test results were admissible despite the requirement

in the Code of State Regulations ("CSR") that the equipment be calibrated by the use of three different standards.  We affirm.

## FACTS AND PROCEDURAL HISTORY[1]

Courtney was stopped by a state trooper and subsequently arrested for driving under the influence of alcohol on July 16, 2013, in Henry County.[2]  Following his arrest, he was given a breath test to determine his blood alcohol content ("BAC").  The test determined his BAC to be .149 percent.  Courtney was notified that his license and privilege to operate a motor vehicle were subject to administrative sanction pursuant to Section 302.520[3] since his BAC exceeded the permissible statutory limit of .08 percent.  Courtney timely challenged the administrative sanction through the appeal process set forth in Section 302.530.  A hearing examiner affirmed the decision to revoke Courtney's driving privileges, effective November 20, 2013.  Courtney requested a trial *de novo* as provided by Section 302.535.

A bench trial was held on April 16, 2014, with the sole issue in dispute being the admissibility of the result of Courtney's breath test.  The Director presented three witnesses:  Brian Lutmer ("Lutmer"), Senior Public Health Scientist and Program Manager of the Breath Alcohol Program for the DHSS, Trooper Robert West ("Trooper West"), the officer who performed the maintenance and calibration checks on the Datamaster breath testing machine used to test Courtney, and Trooper Marvin Richardson

---

[1]We view the evidence in the light most favorable to the trial court's judgment.  *Ridge v. Dir. of Revenue*, 428 S.W.3d 735, 736 (Mo. App. W.D. 2014) (citation omitted).
[2]Prior to trial, Courtney stipulated that there was probable cause for his stop and his arrest, and the only issue he was contesting was the admissibility of the breath test.  Therefore, we do not detail further the evidence regarding the stop or arrest.
[3]All statutory references are to RSMo 2000 cumulative as currently supplemented unless otherwise noted.

("Trooper Richardson"), the arresting officer who administered the breath test to Courtney.

DHSS is the agency in charge of establishing the regulations and protocols for the breath testing program for the State of Missouri. Lutmer wrote the regulatory standards that govern the administration of the breath test as well as those that govern the maintenance of the breathalyzer machines. His intent in drafting the regulations was that only one standard solution would be required in calibrating the breath testing machines and that the list of three different standards contained in regulation 19 CSR 25-30.051 was meant to give "law enforcement additional options." He also stated that the maintenance report checklist form, that he personally drafted, was intended to match the requirements of the regulation.

Trooper West completed the maintenance check on the Datamaster that was used in Courtney's arrest. Trooper West used only one simulator solution as the standard against which he checked the calibration of the simulator for the machine. He completed the maintenance report checklist form when he performed the maintenance on July 11, 2013. The completed form was submitted to the DHSS. The box labeled "Simulator Temp" is filled in indicating that the temperature of the solution was 34.1 degrees Celsius. The report form was completed and signed by Trooper West.

Trooper Richardson was the arresting officer and administered the breath test to Courtney. Courtney objected to the admission of the results of the breath test, arguing that the Director failed to lay a proper foundation under 19 CSR 25-30.051,[4] as follows:

> COURTNEY'S COUNSEL: Judge, I would object at this juncture. The Director of Revenue has not laid a proper foundation pursuant to 19 CSR 25-30 in multiple respects. They have not laid a sufficient foundation for the admission of the breath test. They haven't met the requirements that are set forth in the Code of State Regulations, specifically, 19 CSR 25-30.051.[5]

> THE COURT: Subject to that objection, the Court is going to allow the witness to answer, and I'll rule on the objection in my judgment.

At this point, rather than ensuring he had met the foundational "requirements" that are set forth in 19 CSR 25-30.051, counsel for the Director embarked upon an "additional argument."

> DIRECTOR'S COUNSEL:[6] Your Honor, could I make one additional argument --

> THE COURT: You may.

> DIRECTOR'S COUNSEL: -- beyond what we've already established?

> THE COURT: Yes, sir.

> DIRECTOR'S COUNSEL: We would argue that the Code of State Regulations, when they were changed, which [counsel] referred to, we believe that those act retrospectively and, therefore, the maintenance report does meet the regulations required by the regulation requirement. There is

---

[4]Unless otherwise indicated all regulatory references are to the Missouri Code of State Regulations in effect as of July 16, 2013.

[5]The regulation consists of eight numbered paragraphs and subparagraphs detailing the following: (1) general standards, (2) simulator solutions and the three allowed values, (3) approved suppliers of solutions, (4) use of an NIST-certified thermometer, (5) compressed ethanol-gas mixture values required, (6) approved suppliers of ethanol-gas mixtures, (7) optional use of such mixtures, and (8) the validity of maintenance reports based on compliance with rules in effect at the time of the maintenance test. 19 CSR 25-30.051 (Nov. 30, 2012).

[6]The record credits Courtney's counsel with this question. However, the argument following the question is credited to the Director's counsel such that the context indicates that the Director posed the question.

4

case law that establishes that these regulations which govern the admissibility of the breath test are procedural and, therefore, apply retrospectively unless there is clear intent for them to only apply prospectively. So based on that, as well as our additional arguments and evidence provided by Mr. Lutmer and Mr. West.

Courtney's counsel then addressed the argument that the Director had injected:

COURTNEY'S COUNSEL: *In response to that -- and I don't know if he was, I guess, just making a short argument to the Court, but in response to that*, I would suggest that it's not at all ambiguous, what's set forth in the regulations. And furthermore, the regulations specifically say -- that particular section specifically says that maintenance reports completed prior to the effective date of this rule shall be considered valid under the rule if the maintenance report was completed in compliance with the rules in effect at the time the maintenance report was completed. Well, now they want to have it both ways. They want to say that it's the one that's in effect now, not the one that's in effect at the time. But the regulation specifically says that it's the one at the time, that it shall be valid if it's the one at the time. And that's the one that we -- That's the one that's relevant today.

DIRECTOR'S COUNSEL: And, Your Honor, in response to that, we would disagree that that clause pointed out by [counsel] is a savings clause in there to save maintenance reports to make sure that they are still admissible if they apply to the previous regulations. It is not intended to kill off maintenance reports, and that clause would only be necessary if the regulations apply retrospectively. If they only applied prospectively, that clause wouldn't be necessary.

The court made note of the arguments and objections, replying as follows:

THE COURT: *Well, the Court has noted both arguments*. And I understand the Director's argument that the change should be applied retrospectively, and so that if the maintenance report was done in accordance with the new reg it ought to be good enough. I've made a note of that argument. *I'm going to allow the answer subject to those objections, and I'll rule in my judgment.*

DIRECTOR'S COUNSEL: Thank you, Your Honor.

BY DIRECTOR'S COUNSEL:

Q. And what was the result of that breath test?

A. .149.

(Emphases added.)

At the conclusion of Trooper Richardson's testimony, the Director offered Exhibit 2 into evidence which was fifteen pages in length and described as "the DOR certified record of the Alcohol Influence Report and all the supporting documents." The exhibit included the arrest report, the trooper's narrative report, breath test results, and Trooper Richardson's permit and license. Courtney again objected to the admission of the exhibit based on lack of foundation in the following exchange:

> BY COURTNEY'S COUNSEL: I would renew my objection to any information contained in that exhibit that relates to the results of the Datamaster test that was conducted in this case. And again, that objection is because the Director has failed to lay an adequate foundation pursuant to 19 CSR 25-30.051.
>
> COURT: Subject to that objection, Exhibit 2 will be admitted.

After the close of evidence, the following exchange occurred:

> COURTNEY'S COUNSEL: That's fine. I would like to say one -- just one other thing in closing if [counsel] is finished.
>
> DIRECTOR'S COUNSEL: Absolutely.
>
> COURTNEY'S COUNSEL: In addition to the argument that I made about the periodic calibration, maintenance reports and the failure of the Director to lay a foundation as it relates to that, I think the Director also failed to lay an adequate foundation as it relates to -- it's the same section as I identified in my objection, 19 CSR 25-30.051, but there wasn't any evidence offered today that the breath alcohol simulator used in this case was certified against a National Institute of Standards and Technology traceable reference thermometer between January 1, 2013 and December 31, 2013, which is required by the regulation.

6

DIRECTOR'S COUNSEL: Your Honor, I actually have that certified document.[7] I forgot to offer that into evidence. I don't know if the Court would allow me the opportunity to do that now or not.

THE COURT: Well, I --

COURTNEY'S COUNSEL: I would be opposed to that, Judge. He didn't --

THE COURT: I think that's not fair to the Petitioner. The evidence has been closed and --

DIRECTOR'S COUNSEL: Your Honor, when the -- when the maintenance and the breath test results were offered, that objection was never made.

COURTNEY'S COUNSEL: I objected pursuant to that exact section. Well, I mean, that paragraph is contained in the same section, 19 CSR 35-30.051.

DIRECTOR'S COUNSEL: However, that specific objection was not made at the time.

COURTNEY'S COUNSEL: That's the only objection I did make, was that they failed to lay a foundation pursuant to that section.

DIRECTOR'S COUNSEL: Well, Your Honor, that's -- I mean, all of our argument was over another -- another part of that section. He made a general objection.

COURTNEY'S COUNSEL: I'm not required to tell them in advance.

DIRECTOR'S COUNSEL: A specific --

THE COURT: I think --

DIRECTOR'S COUNSEL: -- objection is required.

---

[7]The Director argues before this court that the document in question was a properly authenticated record establishing that a NIST traceable thermometer was properly used to calibrate the breath testing machine used in this matter. The document referred to by the Director at trial was not marked as an exhibit, is not contained in the legal file or the record before this court, and no offer of proof was made as to the contents of the document counsel referred to at the trial, nor, key to this case, was the document presented to the trial court in post-trial briefing. A party is obligated to include all documents necessary for us to rule on the issues presented. Rule 81.12(a).

7

THE COURT: Yeah, I believe that's true. I don't think there was any indication that there was an objection to the certification of the simulator, so that objection is going to be overruled.

DIRECTOR'S COUNSEL: Thank you, Your Honor.

During the course of the proceedings, the court granted the parties one week to file further written objections to the evidence and granted the opposing party an additional week to file any written response to those objections. The Director requested that, if the trial court were to ultimately sustain any of Courtney's objections as to any of the evidence, then the evidence and testimony on that subject should be considered an offer of proof as to those issues. The trial court granted this request.[8]

Ultimately, then, Courtney argued that the Director had failed to lay a proper foundation for the breath test results in two main respects, both requirements being set forth in 19 CSR 25-30.051. First, he argued that under the version of the regulation in effect at the time of his arrest, the breath testing machine had to be tested against three separate known simulator solutions, and the machine in question was only tested against one known simulator solution. Second, he argued that "there was no evidence the standard used to calibrate the breath testing device had been certified against a National Institute of Standards and Technology (NIST) traceable reference thermometer or thermocouple, as required in 19 CSR 25-30.051(4)."

In its judgment, entered after the additional objections and legal arguments were submitted by both parties as to both topics, the court specifically found that the first

---

[8]In essence, the trial court took the entire matter under advisement, including the objections made as to the foundation of the breath test evidence and any additional objections and/or legal arguments and responses thereto to be made in writing to the court following trial during a set period of time. Neither party objected to this procedure and, in a bench trial, we find this procedure to be proper.

8

objection was not well taken; however, the second objection was well taken and the court found that, based on the second objection, the results of the breath test were inadmissible. The court addressed its reconsideration of the foundational challenge as follows:

> However, the Court has reconsidered the Petitioner's objection that the breath test results should not be admitted because there was no evidence the standard used to calibrate the breath testing device had been certified against a National Institute of Standards and Technology (NIST) traceable reference thermometer or thermocouple, as required in 19 CSR 25-30.051(4). The Court overruled that objection at the trial on the basis that it had not been clearly stated that Petitioner was objecting to the admission of the results on that basis. ***The Court has reviewed the record and the Court's notes, and finds that the Petitioner clearly stated that he was objecting that the Director had not laid a proper foundation for the admission of those test results under 19 CSR 25-30.051 "in multiple respects". That objection was not limited to a particular section of that regulation, and the Court finds that the objection specifically stated the grounds upon which it was based.*** The Court agrees with the Petitioner that there is no requirement that the Petitioner actually tell the Director what evidence it needs to introduce in order to make its case. The Court therefore sustains the Petitioner's objection to the admission of the breath testing results on those grounds.

(Emphasis added.)

The court then set aside the revocation of Courtney's driving privilege.

The Director timely appeals and Courtney cross appeals.

## ANALYSIS

The Director asserts two points on appeal. First, it argues that the trial court erred as a matter of law in refusing to admit into evidence the result of Courtney's breath test and in reinstating his driving privilege because a breath test result cannot be excluded from evidence absent a timely objection on a specific foundational ground. Second, it argues that the court erred in excluding the test results because compliance with the

9

applicable DHSS regulations was evidenced by the admission of the completed approved maintenance report form, which contained information sufficient to demonstrate compliance with 19 CSR 25-30.051(4). In his cross appeal, Courtney argues that the trial court erred when it overruled his objection to the admission of the breath test results because three different vapor solutions were not used in the maintenance check of the testing device which is required by 19 CSR 25-30.051. The Director's first point is dispositive of the entire cause and therefore we do not reach the cross appeal.

## Standard of Review

> A trial court's judgment in a driver's revocation case is reviewed as any court-tried civil case. We will affirm a judge-tried case unless it is not supported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law. In a court-tried case the judge is permitted wide latitude in the reception of evidence and is presumed to have considered only proper evidence in reaching a judgment. This court is primarily concerned with the correctness of the trial court's result, not the route taken by the trial court to reach that result. Even where the trial court's reasoning is wrong or insufficient, if the correct result was reached, we must affirm.

*Carter v. Dir. of Revenue*, 454 S.W.3d 444, 446-47 (Mo. App. W.D. 2015) (citations and internal quotation marks omitted).

We review the trial court's rulings as to the admissibility of evidence for an abuse of discretion. *Lozano v. BNSF Ry. Co.*, 421 S.W.3d 448, 451 (Mo. banc 2014) (citations omitted). "[The trial court] abuses this discretion when its ruling is clearly against the logic of the circumstances then before the court and is so unreasonable and arbitrary that it shocks the sense of justice and indicates a lack of careful, deliberate consideration." *Id.* (citation omitted).

10

The Director argues that the court erred in excluding the breath test results, an exclusion which the trial court based on the lack of evidence that the calibration of the simulator for the Datamaster was certified against an NIST traceable reference thermometer or thermocouple.

"The Director has the burden of proof to establish by a preponderance of evidence that probable cause existed to arrest [a] driver for driving while intoxicated and that an evidentiary breath test determined the driver's BAC was beyond the legal limit." *Carter*, 454 S.W.3d at 447-48 (citation omitted). To introduce evidence of the defendant's BAC, the Director must lay a separate foundation showing the police conformed to the requirements in the Code of State Regulations. To establish a *prima facie* foundation for admission of breathalyzer test results, the Director must demonstrate the test was performed: (1) by following the approved techniques and methods of DHSS; (2) by an operator holding a valid permit; (3) on equipment and devices approved by DHSS. *O'Rourke v. Dir. of Revenue*, 409 S.W.3d 443, 447 (Mo. App. E.D. 2013) (citation omitted). The regulations that must be followed to satisfy the *prima facie* foundational requirements are set forth in 19 CSR 25-30. *Id*.

The regulation at issue is 19 CSR 25-30.051, Breath Analyzer Calibration and Accuracy Standards, which states in relevant part:

> (4) Any breath alcohol simulator used in the verification or calibration of evidential breath analyzers with the standard simulator solutions referred to in sections (2) and (3) of this rule shall be certified against a National Institute of Standards and Technology (NIST) traceable reference

11

thermometer or thermocouple between January 1, 2013, and December 31, 2013, and annually thereafter.[9]

The Director does not dispute that it bears the burden of proof to establish by a preponderance of the evidence that the law enforcement agency complied with the separate foundational requirements set forth in the CSR. *Carter*, 454 S.W.3d at 447-48. Nor does the Director dispute that foundational evidence regarding the use of a NIST thermometer or thermocouple was required under 19 CSR 25-30.051(4) for admission of the results of the BAC. Rather, the Director contends that the exclusion was erroneous because Courtney never made a specific foundational objection to the lack of foundational evidence regarding the use of a NIST thermometer or thermocouple.

Foundational requirements for the admission of breath tests are only an issue in the event that a timely objection is made. *Bozarth v. Dir. of Revenue*, 168 S.W.3d 78, 82 (Mo. App. E.D. 2005) (trial court properly excluded results of breath test where driver had asserted in motion in limine that Director had failed to meet foundational prerequisites). Put another way, proof of compliance with the regulation only becomes an issue when a proper, timely objection is made of the admission of the BAC. *Id.* "It is particularly important that where an inadequate foundation has been laid for admission of evidence that the objection made be specific as such foundation deficiencies can frequently be remedied." *State v. Tisius*, 362 S.W.3d 398, 407 (Mo. banc 2012) (citation omitted).

---

[9]See, *supra*, note 5 for a summary of 19 CSR 25-30.051 and the Appendix for its entire text.

In other words, "there must be an objection to the admission of the test result 'sufficiently clear and definite to *enable the trial court to understand the reason for the objection*.'" *Endsley v. Dir. of Revenue*, 6 S.W.3d 153, 159 (Mo. App. W.D. 1999) (emphasis added; citation omitted; overruled on other grounds). "An objection is sufficient for this purpose if its underlying reason is readily *apparent to the court*." *Id*. (emphasis added). "In applying the 'specificity' rule, Missouri appellate courts have ruled that general objections such as 'lacks a foundation,' 'irrelevant,' 'calls for speculation,' 'is self serving,' and the like, are not sufficiently specific objections." *Catroppa v. Metal Bldg. Supply, Inc.*, 267 S.W.3d 812, 816 (Mo. App. S.D. 2008) (citation omitted). "Whether a proper foundation has been established is primarily a question addressed to the sound discretion of the trial court." *Bray v. Bi-State Dev. Corp.*, 949 S.W.2d 93, 97 (Mo. App. E.D. 1997) (citation omitted). The purpose of the rule is to ensure the objection is sufficient for the trial court to be able to properly understand and rule upon it.

In determining whether Courtney's objection was "sufficiently clear and definite" such that the trial court did not abuse its discretion in its evidentiary ruling, we note that Courtney objected each time the breath test evidence was offered, arguing that the Director failed to lay a proper foundation for the results to be admitted into evidence and specifically cited 19 CSR 25-30.051 as the ground for his objection. The transcript indicates that the Director was singularly focused on another matter after the initial objection and "forgot" to introduce all required foundational evidence. Then, after the close of the evidence, Courtney argued in open court that the Director's evidence failed to establish that the simulator for the testing device had been shown to be certified against

13

an NIST traceable thermometer or thermocouple. In addition, the trial court, without objection to this process by either party, allowed the parties to raise any additional objections they may have to any of the evidence in writing following the trial, along with any legal arguments they wished to present. Courtney filed a timely brief with the trial court detailing all of his foundational objections to the evidence including extensive discussion of the lack of proof of the use of a NIST traceable thermometer or thermocouple. The Director's brief responded to these arguments.[10]

The Director tries hundreds, if not thousands, of administrative alcohol-related driver's license cases every year. The CSR in question sets out with specificity foundational requirements for the admission of the breath test results. 19 CSR 25-30.051. It is not as though the Director is unaware of these foundational requirements or that these requirements are difficult to establish. The parties are free to stipulate as to some or all of the foundational requirements, just as the parties stipulated as to the probable cause for the stop in this case. Certainly, the Director cannot argue that he was surprised by the requirements of the CSR, when, in fact the Director had the author of the CSR in the courtroom during the trial.

---

[10]The Dissent contends that the transcript indicates that the trial court restricted post-trial briefing to another matter and argues that additional post-trial objections cannot sustain the judgment. But the objection as to foundation was sufficient, as we explain. Additionally, the Director did not object in the trial court that Courtney's briefing was outside the scope of what was permitted. Further, expanded briefing on a foundational matter was allowed post-trial in at least one of the cases cited by the Dissent. *Lester E. Cox Med. Ctrs. v. Richards*, 252 S.W.3d 236, 240-41 (Mo. App. S.D. 2008). More importantly, even if we were to construe the transcript as limiting any written objections to another matter, nothing would have prevented Courtney from raising this preserved foundational issue in a post-judgment motion, and there is no reason to believe that, presented with the exact same briefing on the exact same foundational issue, the trial court would not have reached the exact same conclusion. It is well-settled that we are "primarily concerned with the *correctness* of the trial court's result, *not the route taken* by the trial court to reach that result." *Carter*, 454 S.W.3d at 447 (citation omitted; emphases added).

14

Here, the Director failed to establish that the simulator for the breath testing device was certified against a NIST traceable reference thermometer or thermocouple. Absent proof of this element of the foundation for the breath test results, we cannot find that the trial court abused its discretion in sustaining Courtney's objection and refusing to consider the breath test result. *Carter*, 454 S.W.3d at 448. Had the trial court admitted the breath test result into evidence, absent evidence that the simulator for the breath testing device was properly certified under the regulations, the trial court would have been free to find the breath test result obtained by the use of that device to be unreliable.

We appreciate the Dissent's acknowledgement that much case law surrounding a challenge to the specificity of an objection concerning a foundational challenge is grounded in cases treating the issue of an appellant's preservation of a claim of error that results in the *affirmance* of the trial court's admission of evidence. That is because our standard of review commands us to reverse an admissibility ruling only where the trial court abuses its discretion such that its ruling is clearly against the logic of the circumstances then before the court and is so unreasonable and arbitrary that it ***shocks the sense of justice and indicates a lack of careful, deliberate consideration.*** *Lozano*, 421 S.W.3d at 451.

To that end, we note that even the Dissent's main case in the procedural posture of affirming the admission of evidence is inapposite under the facts of this case. In *Lester E. Cox Medical Centers v. Richards*, 252 S.W.3d 236 (Mo. App. S.D. 2008), the appellants objected to two exhibits. The trial court took their objections under advisement and asked both parties to submit post-trial briefs on the admissibility of the

15

exhibits. *Id.* at 239. The medical center subsequently filed a brief, but the appellants did not. *Id.* The trial court entered judgment without ever making a specific ruling on the objections to the admission of the two exhibits. *Id.* On appeal, as to the first exhibit, the Southern District noted that the argument on appeal had never been raised below. As to the second exhibit, the Southern District noted that the attorney **offering** the exhibit specifically stated the identity of the statute under which he was offering the exhibit that would otherwise be considered hearsay and handed a copy of the statute to the judge. *Id.* at 240. In response, the appellants at trial merely stated the objection "[i]t's hearsay[,] I don't think it complies with the statute." The objection was considered too general for a reversal and likened to a general objection for "lack of foundation." That was "***particularly true***" because "***the trial court held open its ruling on the admission of the exhibit and gave Appellants' counsel the opportunity to submit his objections and rationale in support of them via post-trial submission and he simply chose not to do so***." *Id.* at 240-41 (emphases added). Had the Cox appellants properly filed a brief addressing the matter, the trial court very well may have reviewed its initial determination and the record and ruled in the appellants' favor, as was true in the case at bar. Such a ruling may very well have survived reversal under review for abuse of discretion. *Id.* at 240. As the Court in *Lester E. Cox Medical Centers* points out, the objection must be sufficient to allow the *trial court* to understand the legal basis for the objection. In the case at bar the trial court did in fact understand the basis for the objection and sustained it.

16

The authority that the Dissent cites where the appellate court reversed a trial court's exclusion of the Director's evidence on foundational grounds is not on point. In *Reinert v. Director of Revenue*, for example, ***there was no objection*** at all to the officer's testimony about the results of the breath analysis machine. 894 S.W.2d 162, 163-64 (Mo. banc 1995). The Supreme Court therefore held consistent with precedent that the party against whom the evidence was offered had ***waived*** the objection to that evidence. *Id*.

*Collins v. Director of Revenue* presents a similar story: evidence of BAC was admitted in two different ways at trial. As for the first, the results of the BAC test, we determined that the driver's vague objection was not relevant to our analysis of admissibility, in part because, as here, the trial court deferred ruling on the admissibility of the exhibit until after the bench trial and in part because it was evident which requirement the driver was challenging. 399 S.W.3d 95, 99 (Mo. App. W.D. 2013). As for the second, as in *Reinert*, the *Collins* driver ***had utterly failed to object to officer's testimony stating the results of the BAC***. *Id.* at 100. The objection was ***waived*** and the evidence admitted through that testimony could not be excluded. *Id.*

*Krieger v. Director of Revenue* is additionally inapposite. 14 S.W.3d 697 (Mo. App. E.D. 2000). There, the trial court initially admitted the results of a breath test into evidence but reversed its decision at the close of trial, determining that "the results would not be admissible or considered by the court due to the Director's failure to prove compliance with the fifteen-minute observation period." *Id*. at 702. In that case, the officer was permitted to testify about a driver's BAC, and the only objection was that the log was a copy and not the best evidence: on appeal, the Eastern District of our Court

17

noted that the officer's "testimony as to the result of the test was before the court without any objection as to lack of foundation." *Id.* at 702. ***Thus, again, as in* Reinert *and* Collins, *as to the officer's testimony, there was no objection as to lack of foundation*. *After* the results were admitted, the driver made a vague foundational challenge to additional evidence of the results, to-wit: "the report was not done in accordance with regulations that were applicable at the time the arrest was made." *Id*. The Eastern District determined that the objection was neither timely nor clear and definite. Moreover, unlike in the case at bar, there is nothing in the *Krieger* opinion indicating that that the driver *ever* objected to admission of evidence of the results of the BAC on the ground that the trial court created. In fact, the opinion indicates that the trial court took this issue upon itself:

> The [trial] court, ***without any additional objection from Driver or even a motion to strike Director's testimony***, changed its earlier ruling and denied admission of the breath test result into evidence. The court reasoned that due to "inconsistencies" in the testimony of Director's witnesses regarding the relevant times, the fact that [the officer] was not wearing a watch, and that fact that there was no document evidence which reflected an entry as to when the observation period began, ***Director failed to establish that Driver had been observed for fifteen minutes prior to the administration of the breath analysis test as required by the Department of Health regulations***.

*Id.* at 700 (emphases added).

The viability of *Krieger* is questionable in light of *White v. Director of Revenue*, which emphasized the Director's burden of production and persuasion. 321 S.W.3d 298, 304-05 (Mo. banc 2010). In other words, the trial court's decision in *Krieger* may very well have gone to the heart of the burden of proof rather than being a matter of foundational defect. Even setting that aside, however, the case at bar is in a different

18

posture: Courtney timely objected to the admission of the BAC results on foundational grounds "in multiple respects" for not having "met the requirement_s_" under 19 CSR 25-30.051. And he renewed that objection, again citing 19 CSR 25-30.051. Even put on notice of the objection based on the foundational "requirements" of 19 CSR 25-30.051, the Director took no action to remedy the problem. In fact, the Director, who was required to establish this evidence, admitted the error: "*I forgot to offer that into evidence.*"[11] The Director's forgetfulness does not transform a specific objection into a general one.

There are a multitude of foundational challenges that Courtney's counsel could have lodged during this trial. The trial court was not faced with the general objection of "lack of foundation" as in *Reed v. Director of Revenue*, 834 S.W.2d 834, 836 (Mo. App. E.D. 1992), or "a proper foundation has not been laid" as in *Stewart v. Director of Revenue*, 702 S.W.2d 472, 476 (Mo. banc 1986), or even that "the report was not done in accordance with regulations that were applicable at the time the arrest was made" *Krieger*, 14 S.W.3d at 702.[12] The trial court understood the objection and ruled upon it.

_____

[11]Even if the document the Director referred to did in fact show the use of a NIST traceable thermometer, we have no information in the record before this court that the use of this thermometer was properly done on the dates required by the regulation. *Carter*, 454 S.W.3d at 447-48.

[12]The Dissent additionally relies on *Discover Bank v. Smith*, 326 S.W.3d 120 (Mo. App. S.D. 2010), where a creditor succeeded in an action against a cardholder. At trial, the cardholder objected to the creditor's foundation, using a specific portion of language from the business records exception (without citing Section 490.680). On appeal, the cardholder tried to argue that the creditor had not laid a foundation, citing additional portions of the business records exception that it had never raised to the trial court. The Southern District of our Court determined that only the specific reason raised to the trial court was preserved, and reversed on that ground. *Id.* at 125-26. While we could understand the Dissent's likening of the business records rule in general to 19 CSR 25-30 in general, we are not swayed that the creditor's use of some of the language from a statute is equivalent to Courtney's citation of the specific regulation in question, 19 CSR 25-30.051. In other words, *Discover Bank* is not instructive because there the cardholder's objection was not 'sufficiently clear and definite to enable the trial court to understand the reason for the objection,'" so as to put the trial court on notice of reasons to exclude the evidence, reasons the creditor later wished examined on appeal.

19

We will not hold that the trial court abused its sound discretion as to whether the Director laid a proper foundation where Courtney objected on the ground that a foundation had not been laid under a specific regulation, where the author of that specific regulation was in the courtroom, where the Director's attorney "forgot" to offer evidence that might have cured the foundational deficiency, and where the trial court left open his ruling of the motion for post-trial briefing as to matters of admissibility of evidence. It is not "sandbagging," as the Dissent contends, to require the Director to ensure it has met the foundational requirements of the specific regulation drawn into question by opposing counsel. Under these facts, any other holding would relieve the Director of its burden of proof. *White*, 321 S.W.3d at 304-05.

In this court-tried case, a review of the record indicates that the court's ruling is measured and considered, and it does not shock our conscience. The Director was required to lay a foundation. Even when alerted to its failure to do so, the Director forgot to comply with established foundational requirements. Director's Point I is denied. Based on our ruling on Point I, we do not need to reach Point II raised by the Director or the point raised in Courtney's cross appeal.

## CONCLUSION

The trial court's judgment is affirmed.

_____
Gary D. Witt, Judge

Ahuja, Chief Judge, Presiding, dissents in separate opinion
Torrence, Special Judge, joins in the majority opinion

20

**Appendix**

**19 CSR 25-30.051 – Breath Analyzer Calibration and Accuracy Verification Standards**

*PURPOSE: This rule defines the standard simulator solutions or compressed ethanol gas mixtures to be used in verifying and calibrating breath analyzers, as well as the annual checks required on simulators used in conjunction with the standard simulator solution.*

(1)     Standards used for the purpose of verifying and calibrating breath analyzers shall consist of standard simulator solutions or compressed ethanol-gas standard mixtures.

(2)     Standard simulator solutions, used to verify and calibrate evidential breath analyzers, shall be solutions from approved suppliers.  The standard simulator solutions used shall have a vapor concentration within five percent (5%) of the following values:

     (A)     0.10%;

     (B)     0.08%; and

     (C)     0.04%.

(3)     Approved suppliers of standard simulator solutions are –

     (A)     Alcohol Countermeasure Systems, Inc.
          Aurora, CO 80010

     (B)     Guth Laboratories, Inc.
          Harrisburg, PA 17111-4511

     (C)     RepCo Marketing, Inc.
          Raleigh, NC 27604

     (D)     Draeger Safety, Inc.
          Durango, CO 81303-7911

(4)     Any breath alcohol simulator used in the verification or calibration of evidential breath analyzers with the standard simulator solutions referred to in sections (2) and (3) of this rule shall be certified against a National Institute of Standards and Technology (NIST) traceable reference thermometer or thermocouple between January 1, 2013, and December 31, 2013, and annually thereafter.

(5)     Compressed ethanol-gas standard mixtures used to verify and calibrate evidential breath analyzers shall be mixtures provided from approved suppliers. The compressed ethanol-gas mixtures used shall have a concentration within five percent (5%) of the following values:

     (A)     0.10%;

     (B)     0.08%; and

(C)     0.04%.

(6)     Approved suppliers of standard compressed ethanol-gas mixtures are –

    (A)     Intoximeters, Inc.
            St. Louis, MO 63114

    (B)     CMI, Inc.
            Owensboro, KY 42303

    (C)     Draeger Safety Diagnostic, Inc.
            Durango, CO 81303-7911

    (D)     ILMO Products Company, Inc.
            Jacksonville, IL 62651-0790

(7)     Compressed ethanol-gas mixtures shall only be used to verify and calibrate evidential breath analyzers listing compressed ethanol gas mixtures as an option during the maintenance check (see 19 CSR 25-30.031).

(8)     Maintenance reports completed prior to the effective date of this rule shall be considered valid under this rule if the maintenance report was completed in compliance with the rules in effect at the time the maintenance was conducted.



# IN THE MISSOURI COURT OF APPEALS
## WESTERN DISTRICT

ERIC CHRISTOPHER COURTNEY,    )
        **Appellant-Respondent,**   )
                             )   **WD77646**
v.                          )   **consolidated with WD77657**
                             )
DIRECTOR OF REVENUE,     )   **FILED: October 27, 2015**
        **Respondent-Appellant.**  )

## DISSENTING OPINION

The majority affirms the circuit court's decision setting aside the revocation of Eric Courtney's driving privileges. The Director of Revenue revoked Courtney's driving privileges after he was arrested on probable cause to believe he was driving while intoxicated, and after a breath analysis established that he had a blood-alcohol concentration of .149%, almost twice the legal limit. The majority upholds the trial court's conclusion that the breath test results were inadmissible, because the Director failed to establish a foundational element for admission of the test results: that the monthly verification of the calibration of the breath analyzer was conducted using a National Institute of Standards and Technology traceable reference thermometer or thermocouple (the "NIST-thermometer requirement").

I respectfully dissent. Courtney failed to object that the Director failed to prove compliance with the NIST-thermometer requirement, at a time when the Director had an opportunity to cure this omission. Because Courtney failed to make a specific, timely objection

on this basis, the trial court erred in relying on this purported foundational defect to exclude the breath analysis from evidence.

## Discussion

### I.

The majority first concludes that Courtney made a sufficiently specific objection *during trial* when he referred to 19 CSR 25-30.051 as the basis for his objection. I disagree.

Regulations promulgated by the Department of Health and Senior Services ("DHSS") require that the calibration of breath analyzers used to measure blood-alcohol concentration must be verified at least once every 35 days. *See* 19 CSR 25-30.031(3). 19 CSR 25-30.051 (set forth in full in an Appendix to the majority opinion) contains multiple requirements for the standardized samples and equipment used during these monthly calibration verifications. Among other things, 19 CSR 25-30.051 specifies: that the calibration verification must be performed using standard simulator solutions or ethanol-gas mixtures; that the standard simulator solutions or ethanol-gas mixtures must possess particular concentrations; that the standard simulator solutions or ethanol-gas mixtures must be acquired from approved suppliers; that a NIST-traceable reference thermometer or thermocouple must be used to certify the simulator used in the calibration verification; and that certification of the simulator device must occur during calendar year 2013, and annually thereafter.

Although 19 CSR 25-30.051 contains multiple different requirements, during the trial *de novo* Courtney objected to the admission of the breath test results with only the following vague objections: that "[t]he Director of Revenue has not laid a proper foundation pursuant to 19 CSR 25-30 in multiple respects," and that "[t]hey haven't met the requirements that are set forth in the Code of State Regulations, specifically, 19 CSR 25-30.051." Later, Courtney repeated his vague

objection, stating that "the Director has failed to lay an adequate foundation pursuant to 19 CSR 25-30.051."

In context, Courtney's vague objections referred to a separate foundation issue, not the NIST-thermometer requirement. The meaning of Courtney's general objections would have been obvious to the Court based on Courtney's cross-examination of two earlier witnesses, Brian Lutmer, program manager of DHSS's breath alcohol program, and Corporal Robert West, who actually performed the most recent calibration verification of the breath analyzer used to test Courtney. In his cross-examination of these witnesses, Courtney's counsel focused on a single issue concerning compliance with 19 CSR 25-30.051: that the calibration verification had been performed using only one standard simulator solution, having a vapor concentration of 0.100%, rather than with simulator solutions having all three vapor concentrations listed in 19 CSR 25-30.051(2). In addition, following Courtney's objections the parties made legal arguments to the court concerning the retrospective application of later-enacted rule changes to 19 CSR 25-30.051. The later rule revisions addressed the number of standard simulator solutions required during the monthly calibration verifications; the rule changes had no effect on the NIST-thermometer requirement.

Indeed, *after* the close of evidence, Courtney's counsel acknowledged that his objection based on the NIST-thermometer requirement was a new, additional argument. In his first reference to this issue, *after* the close of the evidence, counsel stated:

> ***In addition to the argument*** that I made about the periodic calibration, maintenance reports and the failure of the Director to lay a foundation as it relates to that, ***I think the Director also failed*** to lay an adequate foundation as it relates to – it's the same section as I identified in my objection, 19 CSR 25-30.051, but there wasn't any evidence offered today that the breath alcohol simulator used in this case was certified against a National Institute of Standards and Technology traceable reference thermometer between January 1, 2013 and December 31, 2013, which is required by the regulation.

(Emphasis added.)

In response to this belated objection, the Director's counsel stated that "I actually have that certified document. I forgot to offer that into evidence." Although the Director's counsel offered the document establishing compliance with the NIST-thermometer requirement into evidence, Courtney's counsel objected because the evidence was now closed. The Director's counsel also argued that Courtney had failed to make a "specific objection" concerning use of an appropriate thermometer or thermocouple when the breath test results were offered. The circuit court agreed, concluding that "I don't think there was any indication that there was an objection to the certification of the simulator, so that objection is going to be overruled."

In its judgment, issued approximately six weeks after trial following post-trial briefing, the trial court "reconsidered" its earlier conclusion that Courtney's objection at trial was insufficient to invoke the NIST-thermometer requirement. The court explained:

> [T]he Petitioner clearly stated that he was objecting that the Director had not laid a proper foundation for the admission of those test results under 19 CSR 25-30.051 "*in multiple respects*."[1] That objection was not limited to a particular section of that regulation, and the Court finds that the objection sufficiently stated the grounds upon which it was based. The Court agrees with the Petitioner that there is no requirement that the Petitioner actually tell the Director what evidence it needs to introduce in order to make its case. The Court therefore sustains the Petitioner's objection to the admission of the breath testing results on those grounds.

Courtney's general objections to the admission of the breath test results on the basis that the Director "failed to lay an adequate foundation pursuant to 19 CSR 25-30.051," was insufficient to assert an objection based on the specific requirement that monthly calibration verification be conducted using a particular thermometer or thermocouple. "Where . . .

---

[1] The judgment is inaccurate when it states that Courtney objected that the breath test results violated 19 CSR 25-30.051 "in multiple respects." Instead, Courtney's counsel objected that the test results violated "*19 CSR 25-30*" in multiple respects. 19 CSR 25-30 is an entire Chapter of the Code of State Regulations, which occupies 28 pages of the Code, and contains nine individual regulations, many of which contain multiple sub-parts.

testimony is challenged on the basis of sufficient foundation, the challenge is essentially one of admissibility, and such challenges must be raised by a timely objection." *Discover Bank v. Smith*, 326 S.W.3d 120, 125 (Mo. App. S.D. 2010) (citation and internal quotation marks omitted). "It is particularly important that where an inadequate foundation has been laid for admission of evidence that the objection made be specific as such foundation deficiencies can frequently be remedied." *Id.* (citation and internal quotation marks omitted). While the circuit court may be correct that "there is no requirement that the Petitioner actually tell the Director what evidence it needs to introduce in order to make its case," Courtney *was* required to state his objection with sufficient specificity so that the Director's counsel would know what foundational defect he had to cure.

Courtney's objections cited a regulation containing multiple separate requirements for the solutions, gas mixtures, and equipment used to calibrate and verify the calibration of breath analyzers. Courtney did not specify *which* requirements he claimed the Director had failed to satisfy, and his examination of previous witnesses, and his post-objection arguments, established that his concern was with the number of simulator solutions used in the calibration verification, not with the type of thermometer or thermocouple. In these circumstances, his objection was insufficient. *Lester E. Cox Medical Centers v. Richards*, 252 S.W.3d 236 (Mo. App. S.D. 2008), held a similar objection to be inadequate. In *Richards*, the appellant objected to the admission of certain business records on the basis that the records did not comply with "the statute." The Court explained:

> When Cox sought to introduce Exhibit 3 at trial, counsel for Appellants objected, stating that "[i]t's hearsay. I don't think it complies with the statute." An objection to evidence "must be 'sufficiently clear and definite' so that [ ] counsel has the opportunity to correct any error and the trial court can correctly rule on the objection." When opposing counsel has specifically stated the identity of the statute under which he is offering an exhibit that would otherwise be considered hearsay and simultaneously hands a copy of it to the

judge, we hold that ***an objection of "[i]t's hearsay[,] I don't think it complies with the statute" is much like an objection of "lack of foundation;" it is too general to warrant the trial court's sustaining it and preserves nothing for review. The objection was not sufficiently definite so as to draw the trial court's attention to the portion of the cited statute that was alleged to have not been satisfied.***

*Id.* at 240-41 (emphasis added; citations and footnote omitted).[2]

Significantly, the Eastern District found that an objection to the admission of breath test results, on the basis that "the report was not done in accordance with regulations that were applicable at the time the arrest was made," was insufficient to preserve a claim of non-compliance with the fifteen-minute observation period. *Krieger v. Dir. of Revenue*, 14 S.W.3d 697, 702 (Mo. App. E.D. 2000). The Court explained that "[t]he objection was broad and theoretically encompassed any number of unspecified foundational grounds. Such an objection is not sufficient to deny the admissibility of the evidence." *Id.*; *see also Discover Bank v. Smith*, 326 S.W.3d at 124-26 (an objection that a records custodian "has not testified sufficient to satisfy the business records exception to hearsay," was not enough to preserve objections for failure to satisfy specific business records requirements); *Catroppa v. Metal Bldg. Supply, Inc.*, 267 S.W.3d 812, 817 (Mo. App. S.D. 2008) (a foundation objection was insufficiently specific where the appellant "failed to include any specific deficient foundational element in its objection").

In the absence of a specific objection, proof of the foundational requirements for admission of breath test results is unnecessary, and a circuit court lacks the authority to exclude the breath test results from evidence. The Missouri Supreme Court made this clear in *Reinert v.*

---

[2]      The majority suggests that *Richards* is distinguishable, because the Court suggested that post-trial briefing might have been an appropriate avenue to raise a foundational objection in that case. Unlike in *Richards*, however, in this case the trial court did *not* give the parties free rein to assert additional evidentiary objections in their post-trial briefing, as explained more fully in § II, below.

*Dir. of Revenue*, 894 S.W.2d 162 (Mo. banc 1995),[3] where the Director failed to present

evidence concerning the maintenance of a breath analyzer.  The Court explained:

> Although one of the foundational prerequisites for the admission of the results of a breath alcohol test is proof that the machine has been properly maintained, ***the foundational prerequisites are unnecessary where the test result is admitted in evidence without objection***.  When evidence of one of the issues in the case is admitted without objection, the party against whom it is offered waives any objection to the evidence, and it may be properly considered even if the evidence would have been excluded upon a proper objection.

*Id.* at 164 (emphasis added; citation omitted); *see also*, *e.g.*, *Sellenriek v. Dir. of Revenue*, 826

S.W.2d 338, 339 (Mo. banc 1992).[4]

The circuit court lacked authority to exclude the breath test results based on a

foundational defect to which Courtney had not timely objected.  Although the specificity-of-

objection issue is most frequently discussed in connection with an *appellant*'s preservation of a

claim of error for appeal (resulting in *affirmance* of the trial court's *admission* of evidence),

multiple cases have *reversed* a trial court's *exclusion* of the Director's evidence on foundational

grounds where no timely and sufficient foundational objection was made.  This was the case in

*Reinert*, 894 S.W.2d at 164.  We have likewise reversed decisions excluding the Director's

evidence where no specific and timely objection was made to that evidence.  *See Collins v. Dir.*

*of Revenue*, 399 S.W.3d 95, 100, 102 (Mo. App. W.D. 2013) (where driver failed to object to law

enforcement officer's testimony concerning driver's blood-alcohol concentration, "this evidence

could not later be excluded" by the trial court); *Krieger*, 14 S.W.3d at 702 (reversing trial court's

---

[3]     Overruled on other grounds by *White v. Dir. of Revenue*, 321 S.W.3d 298, 305-06 (Mo. banc 2010).

[4]     It may be, as the majority observes, that "[t]he Director tries hundreds, if not thousands, of administrative alcohol-related driver's license cases every year," and that the Director's counsel is well-aware of the foundational requirements for admission of breath test results.  Be that as it may, decisions of the Missouri Supreme Court – which we are bound to follow – hold that it is unnecessary for the Director to put on evidence laying a foundation for the admission of breath test results unless a specific and timely objection is made by a driver.

7

exclusion of breath test results based on lack of evidence of compliance with fifteen-minute observation period where driver only objected that "the report was not done in accordance with regulations").[5]

Courtney's failure to make a specific, timely objection is particularly significant in this case, because the Director was prepared to present evidence to establish that an appropriate thermometer or thermocouple had been employed, but inadvertently failed to do so at trial. Plainly, if Courtney had made a specific objection during trial, the Director would have promptly and easily cured the defect. Foundational objections are subject to heightened specificity requirements precisely because "foundation deficiencies can frequently be remedied." *Discover Bank v. Smith*, 326 S.W.3d at 125 (citation and internal quotation marks omitted). Objections which "come[ ] too late to give opposing counsel an opportunity to . . . lay an appropriate foundation" are insufficient; "[t]o hold otherwise would encourage 'sandbagging.'" *Washington by Washington v. Barnes Hosp.*, 897 S.W.2d 611, 616 (Mo. banc 1995). The majority opinion rewards just such sandbagging by Courtney's counsel.[6]

**II.**

The majority opinion also concludes that the circuit court appropriately relied on the NIST-thermometer requirement because "the trial court, without objection to this process by either party, allowed the parties to raise any additional objections they may have to any of the

---

[5]     Courtney would *not* have been free to raise this unpreserved foundational issue for the first time in a post-judgment motion, as the majority suggests. *See*, *e.g.*, *Peters v. General Motors Corp.*, 200 S.W.3d 1, 15 (Mo. App. W.D. 2006).

[6]     The majority faults the Director's counsel for failing to make an offer of proof concerning the documents it had intended, but failed, to offer during trial concerning the NIST-thermometer requirement. At the time counsel referred to the documents, the trial court *overruled* Courtney's objection based on the NIST-thermometer requirement because Courtney had not asserted this specific objection during trial. Why would the Director's counsel consider it necessary to make an offer of proof of documents which were responsive to an objection, when that objection had been overruled on other grounds?

8

evidence in writing following the trial." This observation cannot sustain the judgment. First, the trial court did not rely on Courtney's post-trial briefing as the source of its authority to consider the NIST-thermometer requirement. Instead, as explained above in § I, the trial court (erroneously) held that the objection Courtney had stated *at trial* was sufficient to raise the issue.

In addition, the majority opinion misstates the record. The court only allowed post-trial objections to the Director's Exhibits 5 and 6, which were certified copies of the MISSOURI REGISTER notices containing the relevant text of 19 CSR 25-30.031 and -30.051. When the Director sought to introduce these exhibits into evidence, Courtney's counsel objected (quite properly) that "there's information contained in Exhibits 5 and 6 that I think is a little different than what was in – in the regulation." It is only with respect to Exhibits 5 and 6 that Courtney requested, and was granted, "the opportunity to be able to review these and supply the Court with a written objection." Courtney was not given license "to raise any additional objections [he] may have to any of the evidence in writing following the trial."

### III.

For the reasons explained above, the trial court's judgment setting aside the revocation of Courtney's driving privileges cannot be sustained based on the lack of evidence proving compliance with the NIST-thermometer requirement. Because Courtney did not make a timely objection based on that requirement, the trial court lacked authority to exclude the breath test results on that basis.[7] Courtney also argues that the judgment can be affirmed because the Director's evidence established that the most recent calibration verification had been performed using a single standard simulator solution having a vapor concentration of .100%. Courtney

---

[7]  Even if the breath test results were admissible, I recognize that the trial court, as fact-finder, would still have to determine what *weight* to give to that evidence. Because it excluded the breath test results, the trial court did not assess the reliability of that evidence, and a remand would be necessary to give the court the opportunity to address this factual issue. *See Collins*, 399 S.W.3d at 102-03.

argues that under 19 CSR 25-30.051(2), the calibration verification was required to be performed using simulator solutions having three different vapor concentrations.

The majority does not address this issue. In addition, the Missouri Supreme Court heard argument on September 1, 2015, in a case raising this question. *Stiers v. Dir. of Revenue*, No. SC94840. Because the Supreme Court will soon decide a case addressing the question, I would hold this case pending a decision in *Stiers*.

## Conclusion

Contrary to the majority, I do not believe the judgment in this case can be affirmed on the basis of the Director's failure to present evidence satisfying the NIST-thermometer requirement, because Courtney did not timely object to admission of the breath test results on this basis. With respect to Courtney's argument that the calibration verification of the breath analyzer failed to comply with 19 CSR 25-30.051(2) because only a single standard simulator solution was used, I would hold this case pending the Missouri Supreme Court's resolution of the same issue in *Stiers v. Director of Revenue*, No. SC94840.

Alok Ahuja, Chief Judge

10